In the Matter of INJURY TO Robert A.
SPERA, an Employee of
Apollo Drilling.

Robert A. SPERA, Appellant
(Claimant/Employee),

v.

The STATE of Wyoming, ex rel. WYO-
MING WORKER'S COMPENSATION
DIVISION, Appellee,

Apollo Drilling (Respondent/Employer).

No. 85-160.

Supreme Court of Wyoming.

Feb. 5, 1986.

James R. Murray, Gillette, for appellant.

A.G. McClintock, Atty. Gen., Terry J.
Harris, Asst. Atty. Gen., and Patrick J.
Crank, Legal Intern, for appellee.

Before THOMAS, C.J., and ROONEY,*
BROWN and CARDINE, JJ., and GUTH-
RIE, J., Retired.

CARDINE, Justice.

This is a worker's compensation case of
first impression in Wyoming. We must
decide whether an employee's temporary
total disability award should be suspended
when he is imprisoned. We will reverse
the district court's suspension of payments
and hold that a worker's incarceration does
not, in and of itself, require a suspension of
temporary total disability payments.

Appellant, Robert A. Spera, was injured
in an industrial accident on October 26,
1984, while employed by Apollo Drilling
Company. His fractured right ankle was

* Retired November 30, 1985.

expected to heal by February 1985, and he was expected to return to work at that time. Appellant's claim for temporary total disability was approved by the court. Payments were made until January 21, 1985, when the district court learned that appellant had been incarcerated in the Campbell County jail continuously since December 20, 1984. While the court declined to order return of the benefits that were paid from December 20 to January 21, the court did, on its own motion, order the suspension of further payments while appellant remained in jail.[1] Appellant was released by his physician to return to work on February 4, 1985. The record does not indicate whether he was also released from jail at that time.

On March 27, 1985, appellant moved for additional benefits consisting of the payments that were withheld during the two-week period from January 21 to February 4. The court held a short hearing on the matter, at which only the appellant and his attorney appeared. The district judge noted that there was a difference of opinion as to whether incarceration required the suspension of temporary total disability payments. He pointed out that he had consistently withheld these payments during periods of incarceration upon the grounds that incarceration was an intervening cause; that a worker was not entitled to payments which replace lost wages that would never have been earned if he were healthy; and that incarceration, rather than the work-related injury, was the legal cause of lost wages.[2]

The problem with the district court's rationale, which has also been advanced by

the State on appeal, is that it is based on tort law principles. We stated in *Cottonwood Steel Corporation v. Hansen*, Wyo., 655 P.2d 1226, 1236 (1982):

> "The amendment to Art. 10, § 4 of the Wyoming Constitution and subsequent enabling legislation did not contemplate that tort law would hold any office in the Worker's Compensation Act except that the employer could defend against claims of the injured employee on the grounds that he or she was culpably negligent. Soon after the amendment to Art. 10, § 4 of the Wyoming Constitution, this court said that the Wyoming worker's compensation scheme was in the nature of an industrial-accident policy.

> \* \* \* \* \* \*

> "We have never changed our minds about that proposition. Sometimes we have had trouble keeping tort concepts out of the worker's compensation law, *Stephenson v. Mitchell*, Wyo., 569 P.2d 95 (1977), and *Meyer v. Kendig* [Wyo., 641 P.2d 1235 (1982)], but we have never deviated from our adherence to the proposition that the worker's compensation law of this state is in the nature of industrial-accident insurance." (Citation omitted.)

When we say that worker's compensation law is based on a concept of industrial insurance, we mean that it is based on contract rather than tort principles. In *Markle v. Williamson*, Wyo., 518 P.2d 621, 624 (1974), we specifically noted:

> "To say that workmen's compensation in Wyoming is in the nature of insurance is to say it stems from contract. Indeed,

---

1. The court's decision that mistaken payments need not be returned was based on our holding in *Matter of Johner*, Wyo., 643 P.2d 932 (1982).

2. We note that the Oregon Court of Appeals has applied the district court's logic to a case in which a worker retired during his period of disability. *Stiennon v. State Accident Insurance Fund Corporation*, 68 Or.App. 735, 683 P.2d 556, 558 (1984). The court stated:

   "The entire statutory scheme illustrates that TTD [temporary total disability] was established for the purpose of compensating a claimant for wages lost because of inability to

work as a result of compensable injury. If the claimant has retired voluntarily following the injury, he can suffer no loss of wages, because, by definition, he has no expectation of receiving wages. The Board did not err in holding that claimant is not entitled to TTD for the period covering his surgery and his recovery therefrom if he had already retired." *Stiennon*, supra.

As the body of our opinion indicates, we do not accept this approach which is based on tort principles.

the clear implication in *Zancanelli v. Central Coal & Coke Co.*, 25 Wyo. 511, 173 P. 981, 989, is that our Workmen's Compensation Act is in contract and not in tort."

Instead of suing his employer for negligence and having to prove duty, breach, proximate cause, and damages, the worker in our state must file for worker's compensation benefits for which his employer is ultimately liable. *Baker v. Wendy's of Montana, Inc.*, Wyo., 687 P.2d 885, 888 (1984). Essentially, the system provides disability insurance coverage for the worker. His right to benefits arises when certain conditions precedent occur, primarily, when he suffers a disabling work-related injury. Under contract principles, the worker should not be denied his benefits after the contingency arises, unless a provision in the statutory contract between the worker, on the one hand, and the State and employer, on the other, explicitly suspends the benefits.

▮▮▮ Under the Worker's Compensation Act, temporary total disability payments are to cease only under one circumstance: when "the recovery is so complete that the *earning power* of the employee at a gainful occupation for which he is reasonably suited by experience or training, is substantially restored * * *." (Emphasis added.) Section 27–12–402(b), W.S.1977 (June 1983 Replacement). Benefits under the statute terminate only when the worker recovers because only then does he regain his earning power. Incarceration has no effect upon benefits which are in the nature of insurance which has become payable as a covered loss. Incarceration does not restore a disabled worker's earning power.

Several state courts interpreting temporary total disability statutes similar to ours have concluded that benefits should be paid to the disabled worker, even if he would be unable to work absent the disability. For example, the Michigan Supreme Court stated in *Sims v. R.D. Brooks, Inc.*, 389 Mich. 91, 204 N.W.2d 139, 140–141 (1973):

"Under the Workmen's Compensation Act it is loss of wage earning *capacity* —not actual loss of wages—which is compensable. The award of compensation, based as it was on a finding of total disability, is not affected by plaintiff's later imprisonment."

Similarly, the court of appeals of Arizona has held that:

"Workmen's compensation temporary benefits were not reduced or eliminated in the case of an injured worker who was subsequently imprisoned for a criminal offense and thereby removed from the labor market. * * * The rationale of such cases is that the purpose of workmen's compensation is to reimburse injured workers for loss in earning *capacity*, not loss of *earnings*." *Franco v. Industrial Commission of Arizona*, 130 Ariz. 37, 633 P.2d 446, 449 (1981), citing *Bearden v. Industrial Commission*, 14 Ariz.App. 336, 483 P.2d 568 (1971).

In its brief, the State argues that a worker receives a double recovery if his temporary total disability payments are not suspended during his time in jail. The State contends that the worker is supported by the county and does not need his disability payments.

Even if we agreed with the State that jail time amounts to a governmental benefit rather than punishment, we would still uphold his right to benefits. The worker's disability payments cannot be characterized as mere governmental largesse that can be eliminated when the worker's needs are fulfilled from another governmental source. Rather, the worker's statutory right to disability payments is akin to a contract right. Nobody would argue, in the private insurance context, that an insurer could withhold payments due under an insurance contract just because the insured had a second policy which covered the same disability. The insurers would ordinarily have to pay under both policies unless one of the insurance contracts contained an excess insurance or exclusionary clause which provided otherwise.

■ We believe this same principle should apply to industrial insurance created by statute. Because there is no statutory exception which eliminates benefits when a worker is jailed, the benefits are due the worker even if his needs are fulfilled from another governmental source. The state legislature can change our statute to suspend payments during periods of incarceration, much like a private insurer might place conditions on his coverage.[3] But in the absence of legislation, we decline the State's invitation to make that policy shift ourselves. In *Matter of Johner*, Wyo., 643 P.2d 932, 934 (1982), we explicitly stated that "worker's compensation is a statutory responsibility and any change or addition to the law is a function of the legislature and not the courts."

The Ohio Supreme Court has recently taken the same cautious jurisprudential route in a case similar to this one. *State, ex rel. Ashcraft v. Industrial Commission of Ohio*, 15 Ohio St.3d 126, 472 N.E.2d 1077 (1984). The *Ashcraft* case arose when the Ohio Industrial Commission adopted a rule suspending workers' disability payments during incarceration. Pursuant to this rule, the commission suspended an incarcerated worker's temporary total disability payments. The supreme court reversed, holding that although

"[t]he policy to be served by the terms of the [rule] is not repugnant to the purposes of the Workers' Compensation Act, in that it would preclude the payment of benefits to claimants who, regardless of a prior industrial injury, are unable to work because they are incarcerated. Such a policy decision * * * must emanate from the General Assembly." *Ashcraft*, supra, 472 N.E.2d at 1079.[4]

### THE DISSENT

The dissent concedes that the decision of this court is supported by "logic" and is in

accord with "precedent" (law) but suggests it is "without reason based upon experience." That is another way of saying, "I do not wish to apply the law as I find it, but will make new law." As appealing as that might be, it is something we should not do.

It is suggested we should legislate in this case, first, because we have a contract dealing with a tort claim. That is not a reason for departing from established law. Many contracts deal with tort claims and are still enforceable contracts. For example, we note the millions of liability insurance policies (contracts) that deal only with tort claims for damage.

Second, it is said that this injured worker is taking advantage of society by entering jail to partake of the jail food and lodging, a devious plan which brands him a "double dipper." I do not see a beneficiary of an insurance contract being called a double dipper just because the contract requires payment.

Simply stated, this worker suffered an injury for which he has a lawful right to compensation. He gave up the right to sue his employer in exchange for this worker's compensation payment. He would not have lost the right otherwise to sue his employer by being jailed. He should not now lose his right to worker's compensation as the dissent suggests.

■ We hold, therefore, that temporary total disability payments may not be suspended under our statute simply because the worker is incarcerated; whether such payments ought to be suspended is a matter that should be left to the legislature.

Reversed.

THOMAS, Chief Justice, dissenting, with whom ROONEY, Justice, Retired, joins.

I must dissent from the disposition reached by the majority opinion in this

---

3. Article 10, § 4 of the Wyoming Constitution creates legislative power to control worker's compensation coverage.

4. Ohio's temporary total disability benefits statute provides that "once determined eligible, the worker shall receive compensation ' * * * so

long as such disability is total * * *'" *State, ex rel. Ashcraft v. Industrial Commission of Ohio*, 15 Ohio St.3d 126, 472 N.E.2d 1077, 1078 (1984). Ohio's statute is like ours because it creates only one ground for termination, the reduction in disability.

case. I cannot fault the ineluctable logic of the majority opinion. The precedent from other states which is relied upon certainly does lead to the result reached.

Sir Edward Coke said, "Reason is the life of the law * * *." Some three hundred years later Justice Oliver Wendell Holmes, Jr. said, "The life of the law has not been logic: it has been experience." My separation from the decision of my brothers then is not that it is without logic, but that it is without reason based on experience. Long before now experience should have taught us that so long as the members of our society are willing to play the role of patsy there will be among its members those who will take advantage of that predilection. My interpretation of the trial court's disposition is that it concluded that the proximate cause of this workman's inability to resume his chosen prior occupation no longer was his injury; instead it was his incarceration. Thus the trial judge forestalled this individual from taking advantage of society.

The majority of the court reject that position concluding that it is based on tort principles rather than contract law, and then concluding that principles of contract law govern in worker's compensation matters. That approach does not address the proposition that the statutory contract itself encompasses tort principles. See, e.g., § 27–12–603(a)(i), W.S.1977 (the employee must demonstrate a "direct causal connection" between conditions of work and his injury); § 27–12–603(a)(ii), W.S.1977 (the injury must fairly be "traced to the employment as a proximate cause"); and § 27–12–606, W.S.1977 ("increase or decrease of incapacity due solely to the injury.") In prior cases this court has recognized tort principles in resolving worker's compensation cases. *Pacific Power & Light v. Parsons,* Wyo., 692 P.2d 226, 229 (1984); *Collins v. Goeman General Tire,* Wyo., 682 P.2d 332, 334 (1984); *Herring v. Welltech, Inc.,* Wyo., 660 P.2d 361, 366 (1983).

Furthermore, I discern a conclusion by the majority that "temporary total disability payments are to cease only under one circumstance: '[w]hen the recovery is so complete that the *earning power* of the employee at a gainful occupation for which he is reasonably suited by experience or training, is substantially restored' § 27–12–402(b), W.S.1977 (June 1983 replacement)." Another provision of the statute, however, provides that no total temporary disability compensation shall be paid during a period in which the employee refuses to submit to an examination requested by his employer. § 27–12–611(c), W.S.1977. By definition, "temporary total disability means a compensable injury which temporarily incapacitates the employee from performing any work." § 27–12–402(a), W.S.1977.

For my part, I prefer the approach taken by the federal government when it provided in the social security statutes that a prisoner's disability benefits would be suspended. 42 U.S.C. § 402(x) (formerly 42 U.S.C. § 423(f)) This statute was upheld as constitutional. *Jones v. Heckler,* 774 F.2d 997, (10th Cir.1985). In *Buccheri-Bianca v. Heckler,* 768 F.2d 1152 (10th Cir. 1985), the court pointed out that the classification was not unconstitutional because it was not "patently arbitrary" and that since the goal of social security is to replace the lost earnings of a worker (See *Pacific Power & Light v. Parsons,* supra.) there is no need to provide social security to a confined felon.

In a similar vein Oregon has held that temporary total disability is for the purpose of compensating the claimant for wages lost because of inability to work as a result of a compensable injury, and it follows that if he has retired he suffers no loss of wages because he has no expectation of receiving wages. *In Re Stiennon,* 68 Or.App. 735, 683 P.2d 556 (1984), review denied 298 Or. 238, 691 P.2d 482 (1984). This decision appears to follow from ORS 656.206(3), which requires an employee to assume the burden of proving permanent total disability and requires "that the worker is willing to seek regular gainful employment and that the worker has made reasonable effort to obtain such employ-

ment." See *Cutright v. Weyerheuser Co.*, 299 Or. 290, 702 P.2d 403 (1985).

I am satisfied that the legislature did not intend to support a miscreant in jail and at the same time provide a windfall in the form of replacement of lost wages through temporary total disability payments. I would hope that since the statute has been construed in a contrary fashion the legislature might attend to that problem as the Congress of the United States did. I have set forth here my difficulties as a jurist with the result reached by the majority. As a citizen, I feel a strong sense of frustration at permitting what I perceive to be miscreant double dipping.