(595 P.2d 748)

No. 50,031

Wayne C. Spackman, *Appellee,* v. Thelma M. Spackman, *Appellant.*

Opinion filed June 8, 1979.

*Phillip Mellor,* of Mellor, Schaefer & Miller, P.A., of Wichita, for the appellant.

*Wayne C. Spackman,* pro se.

Before Foth, C.J., Abbott and Parks, JJ.

Parks, J.: Thelma Spackman, defendant wife, appeals from a trial court order which (1) awarded Wayne Spackman, plaintiff husband, one-half of her replacement housing supplemental payment, (2) retroactively relieved plaintiff of the duty to pay two months past due child support, (3) retroactively credited plaintiff with payment of five months unpaid alimony by deducting $2,500 from plaintiff's alleged share of the replacement housing supplemental payment, and (4) ordered that defendant either pay the $2,575 balance of plaintiff's alleged share of the housing supplemental payment directly to him, or that defendant keep that amount and credit plaintiff to that extent against future alimony payments. The same order found plaintiff not guilty of indirect contempt, a ruling which is not now being contested.

When the parties were divorced on January 5, 1976, their family homestead was included in the path of a planned urban renewal project. Although the divorce decree set aside the homestead to defendant wife, it also contained an agreed formula for dividing the proceeds from the sale of the property to the government. For example, if the price were to exceed $27,000, plain-

tiff was to receive an amount equal to one-half the difference between $27,000 and the sale or condemnation price. A subsequent purchase order executed by Wichita city officials listed the purchase price at $33,750. After prorated taxes and a mortgage owed Wichita Federal Savings and Loan Association were deducted, defendant received $32,325.08. These same figures were confirmed by a closing statement signed by the parties on October 21, 1977. Defendant paid the plaintiff $1750.08 as his share of the proceeds over $27,000, less obligations to be paid by him, including $200 for unpaid child support.

Following negotiations for the sale of the homestead, defendant was approved for a $9,750 supplemental payment under the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970. Receipt of the relocation funds was contingent upon her spending $43,500 for replacement housing within one year of the date of the government's taking possession of the homestead.

Defendant contends that the replacement housing payment is not a part of the sale or condemnation price of the residence and is not subject to a division between the parties under their divorce decree. We agree.

A reading of the Uniform Relocation Assistance and Real Property Acquisition Policies Act, 42 U.S.C.A. § 4601, *et seq.,* makes it abundantly clear that its major purpose is to assure that one who is displaced by a federally assisted program does not suffer a loss if that loss can be reasonably compensated by a money payment. Not only is a displaced person guaranteed the fair market value of his property, if taken, but he is assured of a payment in excess of that amount if that is necessary to acquire a "comparable replacement dwelling." *Louisiana Dept. of Highways v. Coleman,* 444 F. Supp. 151 (M.D. La. 1978).

The additional payment authorized by 42 U.S.C.A. § 4623 is made only to a *displaced person* who purchases and occupies a replacement dwelling which is decent, safe and sanitary not later than one year from the date he receives from the federal agency final payment on all costs of the acquired dwelling. Thus the purpose of federally authorized payments is to supplement traditional eminent domain compensation, not to create an additional element of full compensation. *Division of Admin., Etc. v. Grant Motor Co.,* 345 So.2d 843, 846 (Fla. App. 1977).

Defendant next argues that the trial court lacked jurisdiction to retroactively terminate child support payments.

The divorce decree provided for the couple's two minor children as follows: plaintiff was to pay $200 a month until the older child reached his 18th birthday; the payments would then automatically be reduced to $100 a month and terminate upon the younger child's 18th birthday. Additionally, plaintiff agreed to provide some financial assistance for the children's church missions and college tuition, provided each child obtained a summer job between college semesters.

At oral argument it was learned that the younger child became 18 in October 1977; therefore, the duty to pay child support ceased after the October 5, 1977, payment. Plaintiff admits that he stopped making the payments in September 1977 and that he also failed to pay in October. His justification for withholding the money was that the child was out of the state attending school and he was paying her tuition and rent.

Child support payments may be modified at any time circumstances render such a change proper, but the modification operates prospectively only. *Salem v. Salem,* 214 Kan. 828, Syl. ¶ 4, 522 P.2d 336 (1974). Insofar as the September and October 1977 payments are concerned, the trial court erred when it retroactively relieved plaintiff from judgments which accrued when he failed to pay child support previously ordered by the court.

In view of our holding that plaintiff is not entitled to one-half of the replacement housing supplemental payment, we find that the trial court erred in giving the credits to plaintiff premised upon a share of that money. Accordingly, plaintiff owes the defendant for all alimony erroneously credited by the trial court as paid.

The judgment of the trial court is affirmed insofar as the finding that plaintiff is not guilty of indirect contempt. It is reversed insofar as the court's (a) awarding one-half of the replacement housing supplemental payment to plaintiff; (b) retroactively approving plaintiff's termination of the child support payments and (c) erroneously crediting plaintiff with payment of what is now past due alimony.