640 S.W.2d 527 (1982)
W.E. TONNAR and Esther Tonnar, Appellants,
v.
MISSOURI STATE HIGHWAY AND TRANSPORTATION COMMISSION, Respondent.
No. 32809.
Missouri Court of Appeals, Western District.
September 28, 1982.
*528 S. Preston Williams, Thomas E. Barzee, Jr., North Kansas City, for appellants.
James B. Jackson, Asst. Counsel, Kansas City, for respondent.
Before KENNEDY, P.J., and CLARK and MANFORD, JJ.
CLARK, Judge.
W.E. and Esther Tonnar were the owners of a dwelling house and acreage in Carroll County taken by the Missouri Highway and Transportation Commission for the improvement of Route 65. In addition to payment of compensation for the property taken, the Tonnars claimed relocation assistance funds for acquisition of a replacement dwelling. After declining the sum offered by the Commission as inadequate, the Tonnars appealed, first to a Commission hearing examiner and then to the Circuit Court.
*529 No relief was afforded and they now appeal to this court contending that use of an erroneous formula has denied them appropriate relocation compensation. Reversed and remanded.
In April, 1973, the Commission commenced an action to condemn and acquire appellants' residence and 7.99 acres of ground. That suit, no longer the subject of any dispute, was concluded by entry of a consent judgment in the amount of $38,100.00. Also available to appellants, and conceded by the Commission to be due, is a relocation assistance payment pursuant to the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. §§ 4601-4655 (1976) applicable to state highway projects by reason of the contribution of federal funds. This relocation payment is defined by statute as that amount which, when added to the acquisition cost of the dwelling taken, equals the cost of a comparable replacement dwelling. 42 U.S.C. § 4623 (1976).
To compute the appropriate sum of relocation assistance, which is subject to a maximum of $15,000.00, it is necessary to determine how much was paid in the condemnation of the property owner's former dwelling and to deduct that amount from the ascertained cost of a replacement dwelling. In this case, both figures are disputed, the first because the condemnation award did not apportion the payment between the Tonnars' residence and the additional acreage taken, and the second, because no comparable replacement dwelling was available in the Carroll County locale. Facts bearing on these issues were presented in evidence before the hearing examiner and they must be recounted to compose a background for discussion of the points presented.
The total ground area taken from appellants for the highway project amounted to 7.99 acres of which it was agreed one acre should be considered as supporting and adjacent to the dwelling structure. At the onset of negotiations, the Commission secured an appraisal of the property by Joseph J. Steen. He valued the entire tract at $21,300.00 consisting of $15,200.00 for the house, $600.00 for the land on which it stood and $5,500.00 for the additional acreage. Mr. Steen did not participate in the eventual agreement upon a condemnation payment of $38,100.00, and he therefore had no opinion as to whether the increased amount over his appraisal was attributable to the land value or the residence structure or both. Unfortunately, no other witness testified as to how the compromise figure reflected in the consent judgment was reached.
One David E. Hopkins was an appraiser employed by the Tonnars. He did not enter the case, however, until well after the condemnation was commenced and he did not view the property while appellants' residence was still in place. His valuation of the dwelling structure was based on photographs and details related to him by the Tonnars. In the opinion of Hopkins, the property had a value of $39,000.00 consisting of $1850.00 per acre for the land and $20,500.00 for the house. Hopkins therefore valued the residence and the land on which it was located at $22,300.00.
While the Hopkins appraisal was in an amount very close to the sum which the Commission ultimately paid in the condemnation suit, this record contains no proof that the Hopkins appraisal was in fact the basis for the negotiated settlement. No direct evidence explains why the Commission increased its original offer of $21,300.00, based on the Steen appraisal, to $38,100.00 or how the increment of $16,800.00 was allocated as between land and improvements. Ready calculation of the amount received by the Tonnars for the taking of the residence alone can not, therefore, be made.
As to the cost for replacement housing the amount is also in dispute. The Tonnar home taken in the condemnation was 75 years old and contained high ceilings and large hallways and rooms. It did not have central air conditioning and it was characterized by both good and undesirable features typical of homes built at the turn of the century. No comparable home was available for the Tonnars to purchase.
*530 They did buy a replacement residence at a price of $43,000.00. While they contend the replacement home was comparable, it admittedly was very different in many respects. The home purchased was both newer and larger than the property condemned, it was located in town and it had central heating and air conditioning.
According to appraiser Steen, the only appropriate method to reach a price for a comparable replacement dwelling was to estimate the cost of a newly constructed home and apply adjustment factors taking into account modern materials and the functional obsolescence of appellants' former home. After checking with local building contractors and material suppliers Steen estimated that a replacement home could be built for $30,313.00. That home would contain 1750 square feet compared to 2304 square feet in the residence condemned and would have the same number of rooms. The reduced size was attributable to the elimination of the large hallways, a reduction in the size of bedrooms and other changes reflecting contemporary design. Appellants take exception to this estimate contending the changes deprive the hypothesized structure of comparability.
The Commission and the hearing examiner calculated the relocation assistance payment available to appellants based on certain rules which appear in a Commission publication known as the Right-of-Way Manual. This manual instructs in a situation as here where the condemnation award exceeds the original offer by the Commission in negotiation, the percentage ratio of land to improvements set out in the original Commission appraisal must be preserved. Under the manual formula, no account is taken of the factual basis for an increased award over the original offer.
The relocation assistance payment to the Tonnars in this case was computed at $2119.00 employing the manual formula as follows: The Steen appraisal is taken as a base and establishes the ratio of the value of the house and supporting land to the entire tract. This computation produces a factor of 74%, being the result when the Steen valuation of the house and lot, $15,800.00, is divided by the value of the whole tract, $21,300.00. That ratio of 74% is then applied to the award of $38,100.00 yielding an amount of $28,194.00 as the amount actually paid the Tonnars for the residence taken. This figure is then deducted from the Steen estimate of the cost to construct a replacement dwelling, $30,313.00 and the result is the amount payable as relocation assistance.
It is at once apparent that the valuation under the manual formula does not take into account the evidence of the appraisers, neither of whom testified to value range which would include the formula amount. In fact, appraiser Hopkins valued the house and lot at a much lower figure, $22,300.00, although his estimate of value of the total tract was somewhat higher than the award. Were appraiser Hopkins' figures taken as a basis for the manual formula, the ratio would be 57% and the relocation assistance payment would be $8596.00.
Appellants' first and second points contend the ascertainment of the two values on which the relocation payment amount depends, the payment made for the taking of the former residence and the cost of replacement housing, was in error because no substantial evidence supports the result reached by the Commission and the hearing examiner. This argument requires an evaluation of the import to be accorded the Right-of-Way Manual in controlling how the condemnation award is to be allocated and what conditions are imposed on the design of newly constructed replacement housing. As will hereafter appear, the issue turns upon a determination of whether the Commission and the examiner have correctly declared the law in the application made of the manual.
Because the points differ in some respects, we consider first the issue of how the Commission calculated the amount paid appellants to acquire their former residence. As was noted above the only evidence as to the value of the Tonnars' home and the one acre of ground set apart from the other land condemned was the testimony *531 of Steen who set a value of $15,800.00 and of Hopkins who placed the value at $22,850.00. The value set by the Commission and the examiner, $28,194.00, was beyond the range of the evidence and is supported only if the formula dictated by the manual is binding upon the parties as a rule operative with the force of law. It was so regarded by the examiner and that effect is urged here by the Commission. The question, then, is whether the so called "carve out" percentage taken from the original Commission purchase offer controls in a disputed case irrespective of competent and substantial evidence to the contrary.
No express statutory authority for issuance by the Commission of the Right-of-Way Manual exists. The alleged authority is derivative from § 226.150, RSMo 1978 which requires the Commission to comply with any act of Congress and all rules promulgated by federal agencies necessary to secure federal highway funds. Under 23 C.F.R. § 740.8(b)(1) (1981), the states must prepare and submit to the Federal Highway Administration for approval a manual describing the organization, policies, proceedings and practices in its relocation and right-of-way program. The subject manual was produced by reason of these directives. The Commission contends, without citation of authority, that the provisions of the manual control computation of relocation assistance payments and are binding upon condemnees irrespective of the proof offered in a particular case. The Commission also suggests that the manual procedures have been followed, apparently without question since 1971, and a deviation would disrupt the uniformity of past practice.
The consequence of use of the manual formula to compute relocation assistance awards in cases where landowners receive compensation greater than the initial offer by the Commission is to foreclose any possibility for contest as to whether the payment increment reflects a rejection of the basis for the original offer and the appraisal on which it relied. The formula assumes that the original offer correctly assessed, in relative terms, the value of land and improvements. In actual practice, however, it is rare that two or more appraisers will not view differently the components of land and improvements with the result that the ultimate award may well reflect a difference of opinion as to land value alone or the value of improvements or degrees of each. While the Commission suggests that the formula obviates the need to resolve conflicting opinions of appraisers, that circumstance demonstrates the arbitrary nature of the formula. In the present case, the formula produces a result incompatible with any evidence in the record.
The effect of the Right-of-Way Manual is to declare the policy of the Commission in respect to certain compensation and relocation payments and to set practices and procedures governing rights of the public in these areas. The contents of the manual are therefore rules within the definition of § 536.010, RSMo 1978 and, if validly enacted, they have the force and effect of law. State ex rel. State Highway Commission v. City of St. Louis, 575 S.W.2d 712, 718 (Mo.App.1978). The Commission, however, makes no contention that the manual or any of its parts were published or filed as required by § 536.021, RSMo 1978 applicable to agency rules. Independent search of the Missouri Code of State Regulations discloses no record of the manual and no copy is on file in the office of the Secretary of State. The hearing examiner assumed and the Commission contends the manual became operative because the manual was required by federal regulations and it was approved by a federal agency.
Apart from the fact that no authority supports this attribution of federal jurisdiction to sanction rules promoted by a state agency, the federal statutes and rules make no pretense of giving the federal agencies jurisdiction beyond the requirement for the adoption of manuals by the states. Implicit in that requirement is the assumption that the state manuals and the rules they contain will be adopted in conformity with local state law. Assuming for purposes of this issue that the Commission had authority to promulgate a rule limiting inquiry *532 into the factual basis for computing relocation assistance payments, that rule making power is circumscribed by the provisions of § 536.021, RSMo 1978. Any purported rule not formalized by observance of publication and filing requirements acquires no controlling force. State ex rel. Beaufort Transfer Company v. Public Service Commission of Missouri, 610 S.W.2d 96, 99 (Mo.App.1980).
The present case is strikingly similar to St. Louis County Water Company v. State Highway Commission of Missouri, 386 S.W.2d 119 (Mo.1964). There, the Commission ordered relocation of various water mains which, after completion of a highway widening and improvement project, would be covered by hard surface pavement or incorporated in the shoulders of the roadway if not moved. The water company contested the removal order on the ground that the water mains if left in place would not interfere with construction and maintenance of the highway. Evidence was offered to this effect. The final order of the Commission was based on a publication by the Commission which declared the Commission policy to be any underground utility pipes on the right-of-way interfered with construction and maintenance of the highway and were to be moved.
The opinion noted that § 536.090 (now RSMo 1978) requires the administrative agency to make findings of fact to show how the controlling issues are decided. Establishment of Commission policy as to an ultimate fact, whether the mains constitute interference with construction or maintenance, is not determinative of the matter which must be resolved based on evidence adduced at the hearing. The Court went on to state:
"The object of the hearing is not, as the Commission argues, to determine whether or not the policy should be applied. The object of the hearing is to determine whether or not the evidence shows that in the particular project the utility facilities would interfere with the construction, maintenance or use of the highway." 386 S.W.2d at 125.
In like manner, the decision in the present case is flawed because the Commission did not make a finding from the evidence as to what amount of the condemnation award represented a value attributable to appellants' house and supporting ground. Instead, the Commission based its decision on a policy pronouncement, the directive of the Right-of-Way Manual, and thus the decision is an erroneous declaration of the law.
A similar error was apparently made in the finding as to the other component of the relocation assistance equation, the cost of a comparable replacement dwelling. The Right-of-Way Manual addresses this subject and instructs that in the circumstance where no comparable house is available for purchase, the cost of constructing a new home of equivalent utility should be estimated. There was little or no contest in this case as to any comparable dwelling in location, size or age being available and the Commission therefore resorted to a new construction estimate. The manual suggests a replacement house of modern design should not duplicate "wasted space" such as large hallways.
Appellants take exception to the Commission evidence that a comparable house could be built for $30,313.00 because that estimate, in conformity with the directive of the manual, was for a home some 480 square feet smaller in size, the result of eliminating hallways, reducing bedroom dimensions and otherwise effecting economies from the generous proportions of the house taken in condemnation. The findings by the hearing examiner on this aspect of the case, as in the valuation determination discussed above, indicate reliance on the manual as establishing rules controlling design of constructed replacement housing. While the evidence by appraiser Steen did suggest that modern construction methods and design could well dictate the basis for a house plan not including high ceilings and large hallways and bedrooms, reference by the hearing examiner to the manual requirements in this area compels the conclusion that his decision was prompted by perceived requirements emanating from the manual.
*533 Again, reliance on the manual as a binding directive was a mistaken declaration of law.
In a final point, appellants contend the conduct of the review of the Commission allowance for relocation assistance by a hearing before an examiner in the employ of the Commission denied appellants due process. Implicit in this argument is the suggestion that the hearing examiner, by reason of his position, inclined favorably to the Commission's side of the case. Assuming for the sake of disposition of the point that the constitutional issue was preserved by the content of appellants' petition for review filed in the Circuit Court, there is no merit to the contention. The law is well settled that presentation of a contested case to the administrative agency which is itself interested in the outcome does not vitiate the proceedings. The requirement of due process is satisfied where judicial review is provided. Rose v. State Board of Registration for Healing Arts, 397 S.W.2d 570, 574 (Mo.1965).
Having concluded, as we do, that the Commission made no decision on the ultimate fact issues based on the evidence but resorted to an erroneous utilization of the Right-of-Way Manual, it follows that there has been no decision before the Commission on the merits. The Circuit Court therefore had before it no valid order to review. State ex rel. St. Louis County v. Public Service Commission, 360 Mo. 270, 228 S.W.2d 1 (1950). The appropriate disposition is, therefore, to remand the cause for the rendition of findings based upon the evidence produced and such additional evidence as the Commission may wish to consider.
In accordance with Rule 100.07(e), we reverse and remand this case to the Circuit Court with directions, in turn, to remand to the Missouri Highway and Transportation Commission for further proceedings not inconsistent herewith and in accordance with Chapter 536, RSMo 1978.
All concur.