878 P.2d 667

**Robert H. LANGMADE and Beatrice B. Langmade, husband and wife, Plaintiffs–Appellees,**

v.

**ARIZONA DEPARTMENT OF TRANSPORTATION; Charles E. Cowan, Director, Arizona Department of Transportation; and Gary K. Robinson, State Engineer, Arizona Department of Transportation, Defendants–Appellants.**

No. 1 CA–CV 92–0254.

Court of Appeals of Arizona, Division 1, Department D.

Aug. 4, 1994.

Meyer, Hendricks, Victor, Osborn & Maledon, P.A. by Robert V. Kerrick, G. Murray Snow, Phoenix, for plaintiffs-appellees.

Grant Woods, Atty. Gen. by Joe Acosta, Jr., Robert J. Sokol, Phoenix, for defendants-appellants.

## OPINION

McGREGOR, Judge.

The Arizona Department of Transportation (ADOT) appeals from the superior court judgment reversing its administrative decision, which denied appellees Robert H. Langmade and Beatrice B. Langmade (Langmades) relocation assistance under Arizona Revised Statutes Annotated ("A.R.S.") section 28–1844.A.1. We agree with ADOT that Langmades are not entitled to relocation benefits and reverse the trial court's decision.

### I.

In 1989, Langmades learned that ADOT intended to condemn their property, which lay in the path of the East Papago Freeway. The property consisted of a 1.1 acre parcel that included several improvements, including the home in which Langmades resided.

In valuing the property, both the appraiser whom Langmades retained and ADOT's appraiser opined that the highest and best use of the property was for commercial development. Neither appraiser believed that the house contributed any value to the property's commercial use. Instead, both appraisers thought that the house would have to be demolished to realize the full commercial potential of the property.

ADOT's appraiser valued the property twice, arriving at values of $11.00 and $9.50 per square foot of land, or $541,500.00 and $467,600.00 respectively. Langmades' appraiser valued the property at $18.00 per square foot, or $885,350.00.

Langmades refused ADOT's initial offer for the property, and the court scheduled a condemnation trial. Shortly before trial, the parties settled the matter when ADOT agreed to pay Langmades $640,000.00, or $13.00 per square foot.

In addition to the condemnation award, Langmades sought relocation assistance under A.R.S. section 28–1844.A. This statute allows eligible persons who are displaced from their dwellings to recover "the amount, if any, which, when added to the acquisition cost of the dwelling acquired by the displacing agency, equals the reasonable cost of a

comparable replacement dwelling." [1] A.R.S. § 28–1844.A.1 (Supp.1993).

The parties stipulated that a certain property in Scottsdale was a "comparable replacement dwelling" for Langmades. The Scottsdale property was valued at $359,000.00 and consisted of a 3,660 square foot house located on 1.02 acres with a tennis court and horse privileges. The parties agreed that the land contributed $179,000.00 of the property's value and that the home and other improvements on the property contributed the remaining $180,000.00.

Langmades argued that they were entitled to relocation assistance because ADOT did not pay them any amount for their former "dwelling." Langmades define the term "dwelling" as a house or other residential structure, separate and apart from the land upon which it sits. Because ADOT stipulated that Langmades' house did not contribute any value to their property and that it would have to be demolished before the property could be put to its highest and best use, Langmades assert that the $640,000.00 payment they received from ADOT represented compensation for their land only, not for their dwelling. Thus, they claim that they were entitled to relocation assistance to reflect the difference between the cost of a comparable replacement home ($180,000.00) and the amount that ADOT paid to acquire their "dwelling" ($0).[2]

In October 1989, ADOT determined that Langmades were not entitled to any relocation assistance because the amount paid for their property exceeded the cost of comparable replacement housing. Langmades appealed this decision to the ADOT Relocation Appeals Review Board (the Board). After hearing argument, the Board ruled that Langmades were not entitled to relocation assistance. The Board defined "dwelling" to include both the residential structure and the property upon which it sits and found that

the acquisition cost of Langmades' dwelling compensated them for both the land and the improvements on the land, including their home. Because the acquisition cost exceeded the total cost of the comparable replacement dwelling, the Board concluded that the statute allowed no differential payment. The Director of ADOT, through the State Engineer, adopted the Board's decision.

Langmades sought judicial review of ADOT's decision. The trial court rejected the Board's interpretation of the term "dwelling," which the court decided refers to a "structure or house" separate from the land. The court found that ADOT did not compensate Langmades for their "dwelling" because ADOT had admitted that the house did not contribute any value to the land. Accordingly, the court awarded Langmades a relocation assistance payment and entered judgment in their favor. ADOT timely appealed. We have jurisdiction pursuant to A.R.S. section 12–2101.B.

## II.

The only issue presented is whether the term "dwelling," as used in A.R.S. section 28–1844.A.1, includes the land as well as Langmades' residential structure. We consider this question of statutory interpretation de novo. *See Parker v. Vanell,* 170 Ariz. 350, 351, 824 P.2d 746, 747 (1992). Although we give the Board's interpretation of the statute great weight, *see Capitol Castings, Inc. v. Arizona Dep't of Economic Sec.,* 171 Ariz. 57, 60, 828 P.2d 781, 784 (App.1992), "the trial court and this court are free to draw their own legal conclusions and decide whether an [administrative] agency erred in its determination of the law." *Carley v. Arizona Bd. of Regents,* 153 Ariz. 461, 463, 737 P.2d 1099, 1101 (App.1987). We conclude that the Board correctly interpreted the term dwelling, as used in the relocation assistance statute, to include not only the residential

---

1. ADOT acknowledged that Langmades met the statute's eligibility requirements.

2. Although A.R.S. section 28–1844.A places a $22,500.00 cap on relocation assistance payments, ADOT may exceed this payment limitation in appropriate circumstances. A.R.S. § 28–1851.A (Supp.1993). Langmades argued to the

trial court that this case presents appropriate circumstances because no comparable replacement dwelling existed at the compensation level of $22,500.00, and the court awarded Langmades $180,00.00. At oral argument on appeal, Langmades conceded the cap applies to them.

structure at issue but also the real property upon which it is situated.

Under the relocation statute, a displaced person is entitled to a relocation assistance payment, not in excess of $22,500.00, which equals

> [t]he amount, if any, which, when added to the *acquisition cost of the dwelling acquired* by the displacing agency, equals the reasonable cost of a comparable replacement dwelling.

A.R.S. § 28–1844.A.1 (Supp.1993) (emphasis added).

Numerous Arizona statutes use the term "dwelling," and Arizona courts have recognized that its meaning may vary depending upon the context in which it is used. *Northern Ariz. Properties v. Pinetop Properties Group,* 151 Ariz. 9, 11, 725 P.2d 501, 503 (App.1986) ("The term [Dwelling] is not free from ambiguity, but is one of multiple meanings. Many definitions have been given in adjudicated cases, and they are not entirely harmonious.") (quoting 28 C.J.S. *Dwelling* at 599–600 (3d reprint 1974)). At common law, the term dwelling generally included both the residential structure and the curtilage. *See In re Holland's Estate,* 180 Or. 1, 175 P.2d 156, 165 (1946) ("[A] devise of a 'house' or 'dwelling house' carries with it the land on which the house stands, and that appurtenant thereto.") (quoting Annotation, *What Included in Devise of "House," "Dwelling House," or the Like,* 12 A.L.R. 1179 (1921)); *Italian–American Building & Loan Ass'n v. Russo,* 28 A.2d 196, 198 (N.J.1942) (interpreting dwelling to include not only premises used as residence but also outbuildings within the curtilage or courtyard surrounding the main house). *See generally* 28 C.J.S. *Dwelling* at 600–04.

In reaching its decision, the Board noted that although Arizona's relocation statute does not define "dwelling," the federal relocation statute, 42 U.S.C. section 4623, after which Arizona modeled its statute, and related federal regulations provide guidance. The federal regulations define a "dwelling" as the

> place of permanent or customary and usual residence of a person, according to local custom or law, including a single family house; a single family unit in a two-family, multi-family, or multi-purpose property; a unit of a condominium or cooperative housing project, ... or any other residential unit.

49 C.F.R. § 24.2(h). The Board considered this federal definition in conjunction with A.R.S. section 28–1853.A, which provides:

> Notwithstanding any other provision of law, if the state acquires any interest in real property, *it shall acquire at least an equal interest in all buildings, structures or other improvements located upon the real property* ....

A.R.S. § 28–1853.A (1989) (emphasis added). Construing these provisions together, the Board concluded that a "dwelling" is a residential building that is an inseparable part of the real estate package. We agree.

■ The Board's interpretation also advances the purpose of the relocation assistance statute. If the acquisition cost of the dwelling acquired exceeds the reasonable cost of a comparable replacement dwelling, the displaced person suffers no loss and is not entitled to receive a relocation payment. A.R.S. § 28–1844.A.1; *cf. Spackman v. Spackman,* 3 Kan.App.2d 400, 595 P.2d 748, 750 (1979) (interpreting the federal counterpart to Arizona's relocation assistance statute and finding that the statute's purpose is to ensure that a displaced person can obtain a comparable replacement dwelling by compensating the person for the amount needed to obtain such housing which exceeds the condemnation award received).

Langmades acknowledge that the $640,000.00 condemnation payment from ADOT was reasonable and represented the fair market value of their property. This payment also provided Langmades sufficient funds to obtain a comparable replacement dwelling. Because they acquired a comparable replacement dwelling without incurring a personal financial loss, awarding them additional benefits under the relocation assistance statute would contravene the statute's purpose of providing displaced persons with the additional funds needed to acquire comparable replacement housing. *Spackman,* 595 P.2d at 750.

The Board's interpretation also is consistent with the factual context within which ADOT purchased the property. ADOT's original Summary Statement of Offer to Purchase clearly indicated that ADOT's offer was for the purchase of the home, as well as the land. The Summary Statement sought to acquire the "[l]and, including improvements" for $541,500.00. ADOT listed Langmades' home as one of the improvements it sought to acquire. Although Langmades did not accept this original offer, they did accept ADOT's subsequent settlement offer. The Board reasonably presumed that this subsequent price also included the purchase of all improvements.

Contrary to Langmades' argument, the Board's interpretation of "dwelling" also is consistent with ADOT's relocation policies and procedures. Paragraph 5.09.1 of the agency's general policies and procedures instructs ADOT to separate the price paid for a "dwelling" from the total price paid for the property when the property involves (a) multiple dwellings on a single parcel of land, (b) multiple families in a single dwelling, (c) mixed use properties, or (d) excess land. Langmades' property, however, fits within none of these exceptions.

The three cases on which Langmades rely, *United States v. 158 Acres of Land,* 562 F.2d 11 (8th Cir.1977); *Department of Transportation v. Rushing,* 143 Ga.App. 235, 237 S.E.2d 722 (1977); and *Tonnar v. Missouri State Highway and Transportation Commission,* 640 S.W.2d 527 (Mo.App.1982), do not advance their arguments. All three cases involve an agency's purchase of residential property composed of many acres, or "excess land." The displaced homeowners purchased replacement homes situated on smaller lots. The governing agency therefore had to "carve out" and attribute to the residential structure acquired a reasonable portion of the land purchased. Only by doing so could the agency compare the cost of the acquired property with the cost of the smaller replacement property to determine the amount, if any, of relocation assistance to which the homeowners were entitled.

These cases are distinguishable, however, because Langmades' property did not involve excess land or a "carve-out" situation. ADOT purchased Langmades' 1.1 acre parcel. Langmades agreed to accept as a comparable replacement property a 1.02 acre parcel. Because the properties are virtually the same size, this is not an excess land case.[3]

We conclude that the Board correctly interpreted the term "dwelling," as used in the Arizona relocation assistance statute, to refer both to the residential structure acquired and to the property upon which it sits. We therefore agree with the Board that the "acquisition cost of Langmades' dwelling" was the $640,000.00 ADOT paid for the property. Because this acquisition cost exceeded the $359,000.00 cost of the comparable replacement dwelling the parties chose, Langmades are not entitled to any relocation assistance benefits under A.R.S. section 28–1844.A.1.

### III.

For the foregoing reasons, we reverse the trial court's decision and remand for imposition of judgment in favor of ADOT.

CLABORNE, P.J., and GERBER, J., concur.

---

**3.** On the other hand, the authorities cited do lend some support to ADOT's position that a "dwelling" is composed of the residential structure at issue along with the land upon which it sits and a reasonable amount of land surrounding it. *See, e.g., Tonnar,* 640 S.W.2d at 529 (to determine acquisition cost of the dwelling, court looked at the value of the home acquired as well as the value of one of the 7.99 acres upon which it sat).