114 T.C. No. 10


UNITED STATES TAX COURT



KAREN Y. NIELSEN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 1435-98.                    Filed March 8, 2000.


    P's residential property was condemned by the
State of South Dakota for purposes of a federally aided
highway construction project.  In settlement of the
ensuing condemnation proceedings, P received $65,000.
Subsequently, P and the State became involved in
negotiations and litigation regarding P's entitlement
under the Uniform Relocation Assistance and Real
Property Acquisition Policies Act of 1970, Pub. L. 91-
646, 84 Stat. 1894 (Relocation Act), to additional sums
enabling her to purchase a comparable replacement
dwelling.  This suit was settled for $100,000.  P,
relying on a provision of the Relocation Act exempting
payments thereunder from income, reported no capital
gain on the disposition of her home.  R determined a
deficiency for taxes attributable to the amount by
which the $65,000 payment to petitioner exceeded her
basis in the property taken.
    <u>Held</u>:  The $65,000 received by P in condemnation
of her residence is not exempted from taxation by the
Relocation Act.

Richard Hopewell, for petitioner.

Albert B. Kerkhove, for respondent.


OPINION

NIMS, Judge:  Respondent determined a Federal income tax deficiency for petitioner's 1992 taxable year in the amount of $7,022.  The sole issue for decision is whether proceeds received by petitioner from the condemnation of her residence are subject to taxation as capital gain to the extent that they exceeded her basis in the property.

Unless otherwise indicated, all section references are to sections of the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

This case was submitted fully stipulated pursuant to Rule 122.  The stipulations of the parties, with accompanying exhibits, are incorporated herein by this reference.

## Background

Karen Y. Nielsen, formerly known as Karen Y. Mundt, resided in Sioux Falls, South Dakota, at the time of filing her petition in this case.  More than 1 year prior to 1989, petitioner had obtained title to a home located at 222 North Cliff Avenue in

Sioux Falls.  This residence had previously been a church and contained approximately 8,130 square feet with 18 rooms.  Her cost basis in the property was $25,000.

During 1989, the State of South Dakota, acting through the South Dakota Department of Transportation and the South Dakota Transportation Commission, contacted petitioner and informed her that acquisition of her property would be necessary for purposes of a federally aided highway construction project.  The State then initiated civil condemnation proceedings in May of 1990 by filing a Petition and Declaration of Taking with a South Dakota trial court.

In June of 1992, a relocation agent for the State, Clayton R. Sonnenschein, inspected petitioner's property and met with petitioner's attorneys to discuss the Federal Relocation Assistance Program.  He also provided a brochure explaining the program entitled "South Dakota Relocation Assistance Brochure: Your Rights and Benefits as a Displaced Person Under the Federal Relocation Assistance Program".  The brochure indicated that displaced persons might be eligible for moving cost reimbursement and for replacement housing payments.  For homeowners of 180 days or more, the replacement housing payment was defined as a purchase supplement which included (1) the price differential between the cost of a replacement dwelling and the acquisition cost of the displacement dwelling, (2) increased mortgage

interest costs, and (3) incidental expenses.  The brochure further specified that the replacement housing payment or purchase supplement was an amount "in addition to the fair market value of your property".

On October 14, 1992, petitioner and the State executed a Stipulation for Settlement and for Entry of Judgment in Condemnation, in which they agreed to settle the pending condemnation action as follows:

> 1.  Purchase of the entire lot and house is agreed in the amount of $65,000.00, inclusive of deposit in court.  Defendant will provide a deed for said transfer.
>
> 2.  Possession by the State will be arranged by the parties in determining Relocation Assistance.
>
> 3.  Relocation Assistance is separate and apart from this agreed compensation and is treated as a separate proceeding.

Pursuant to this stipulation, the court entered a Judgment in Condemnation granting the State's petition and providing in relevant part:

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Defendants have deficiency judgment against the State of South Dakota for the difference between $65,000.00 determined as just compensation, and $4,620.00, having been deposited with the Court for the use of the Defendants, being in the ammount [sic] of $60,380.00.
>
> *     *     *     *     *     *     *
>
> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that possession by the State will be arranged by the parties in determining Relocation Assistance.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Relocation Assistance is separate and apart from this agreed compensation and is treated as a separate proceeding.

Shortly thereafter, on October 21, 1992, the State delivered to petitioner a Relocation Assistance Written Offer based on relocation agent Sonnenschein's previous inspection of petitioner's property.  Having concluded that the actual living space in petitioner's home consisted of approximately 1,500 square feet, Sonnenschein had researched the real estate market for similar residences and had determined that the price of a comparable replacement would be $64,900.  Given that the amount already awarded to petitioner in the condemnation action exceeded this figure, the relocation assistance offer stated:

    A.   Replacement Housing Payment/Supplement       $    00.00
         Comparable Replacement          $64,900.00
         Displacement Property           $65,000.00
         Difference-Supplement/RHP       $     00.00

    B.   Incidental Expenses:  Estimated at $300.00
         Claim to be based on actual allowable expenses

    C.   Moving Expense Payment:
         1.   Actual, Reasonable & Necessary Cost to Move
         2.   Self-move based on Departments Room County
              Schedule:  18 rooms                   $1,600.00

    MOVING OPTION TAKEN:  1( ) 2( )

By early November, petitioner had received payments from the State totaling $65,000 and had authorized the trial court to

enter a Satisfaction of Judgment in the condemnation action.  A
warranty deed conveying petitioner's property to the State was
recorded on November 17, 1992.

In December of 1992, petitioner's husband provided
relocation agent Sonnenschein with a floor plan of the North
Cliff property which indicated that a portion greater than 1,500
square feet was being utilized as living space.  Sonnenschein
then revisited the property and prepared a revised relocation
assistance offer using residences comparable to a home of
approximately 2,800 square feet.  The amended offer reflected
that the cost of a comparable replacement would be $99,900 and
that, after subtraction of the $65,000 paid for the displacement
property, the Replacement Housing Payment/Supplement would be
$34,900.

Subsequently, in May of 1993, petitioner filed a
counterclaim with the trial court seeking additional funds and
asserting, among other things, that the State had failed to
comply with the provisions of Federal law governing the
Relocation Assistance Program.  The matter was eventually
resolved in August of 1996 by a Stipulation for Settlement and
Dismissal of All Causes of Action Pending.  The parties
stipulated that "Relocation assistance payment is agreed to be
$100,000.00 in addition to the $65,000.00 previously paid for

this property."  All claims were then dismissed with prejudice, and, in September of 1996, payment of the $100,000 was made by the State.

## Discussion

We must decide whether the $65,000 received by petitioner in condemnation of her residence is taxable to the extent that the payment exceeded her basis in the property.

Petitioner contends that the condemnation proceeds are exempt from taxation pursuant to the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, Pub. L. 91-646, 84 Stat. 1894, presently codified at 42 U.S.C. secs. 4601-4655 (1994) (Relocation Act).  According to petitioner, the Relocation Act mandates that relocation payments shall not be treated as income for tax purposes, and the $65,000 at issue is in fact a portion of the relocation assistance she received from the State.  Hence, in petitioner's view, the subject funds can have no tax consequences.

Conversely, respondent asserts that the Relocation Act does not exempt from Federal income tax the $65,000 received by petitioner.  Respondent maintains that the Relocation Act neither applies to nor addresses the tax treatment of amounts representing the acquisition cost or just compensation paid when property is taken for public use.   Rather, respondent interprets the Relocation Act to remove only payments which are in addition

to acquisition cost from the ambit of the Internal Revenue Code. Therefore, because respondent also contends that the $65,000 was not such a supplemental relocation assistance payment, respondent's position is that to the extent the $65,000 exceeded petitioner's basis in her residence, the difference is taxable as capital gain. Respondent additionally argues that the $65,000 fails to qualify for nonrecognition treatment under the involuntary conversion or residential rollover provisions set forth in sections 1033 and 1034 of the Internal Revenue Code. (Section 1034 was repealed by section 312(b) of the Taxpayer Relief Act of 1997, Pub. L. 105-34, 111 Stat. 839, generally effective for sales and exchanges of principal residences after May 6, 1997. The section 1034 rollover provision was replaced by a revised and expanded section 121.)

We agree with respondent that the $65,000 received by petitioner in condemnation of her residence is not a payment of a type exempted from taxation by the Relocation Act. Furthermore, because petitioner apparently does not contend that nonrecognition treatment pursuant to section 1033 or 1034 is warranted, we need not reach respondent's position thereon. Petitioner made no attempt at trial or on brief to establish her entitlement to benefit from these sections and instead characterized respondent's argument regarding nonrecognition under the Internal Revenue Code as "immaterial in the Court's

adjudication of the action at bar". In light of this posture, we also sustain petitioner's evidentiary objections to certain of the stipulated facts and exhibits. The contested evidence addresses only the reinvestment of the condemnation proceeds, and while such information would have been relevant to applicability of sections 1033 and 1034, it has no bearing upon our analysis of the Relocation Act.

## I.  Internal Revenue Code

As a general rule, the Internal Revenue Code imposes a Federal tax on the taxable income of every individual. See sec. 1. Section 61(a) defines gross income for purposes of calculating such taxable income as "all income from whatever source derived" and further specifies that gains from dealings in property are included within this broad definition. See sec. 61(a)(3). Section 1001(a) then explains that "gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the adjusted basis". The basic principles of tax law would thus require petitioner to recognize as income the amount, $40,000, by which the $65,000 she received from the condemnation of her residence exceeded her $25,000 basis.

## II.  Uniform Relocation Assistance Act

The Relocation Act, however, provides contrasting treatment for certain payments received in conjunction with Government

acquisition of private property and raises the question of whether a different result is compelled in the matter at hand. This question, in turn, presents two subinquiries upon which its resolution depends. The first, a legal question, asks what is meant by the term "payment" as used in and exempted from taxation by the statute. The second, a factual question, asks whether the $65,000 received by petitioner is indeed such a payment.

A.   Meaning of Payment for Purposes of the Relocation Act

To ascertain the meaning of "payment" as used in the Relocation Act, we consider the historical context in which the statute was drafted, the language and structure of the statute itself, and the interpretations thereof offered by case law. From these sources, we conclude that "payment" for purposes of the exemption treatment afforded by the Relocation Act refers only to amounts received as relocation assistance in excess of the just compensation paid for the property.

At the time the Relocation Act was promulgated, payment of just compensation upon the taking of private property for public use had long been mandated by the Federal Constitution and by the constitutions of individual States, including that of South Dakota. See U.S. Const. amend. V; S.D. Const. art. VI, sec. 13. Just compensation had also been further defined, at both the Federal and State levels, as fair market value, what a willing

buyer would pay a willing seller, at the time of the taking.  See
Kirby Forest Indus., Inc. v. United States, 467 U.S. 1, 10
(1984); Rapid City v. Baron, 227 N.W.2d 617, 620 (S.D. 1975).

Against this backdrop, Congress enacted the Relocation Act
of 1970 for the purpose of ensuring that displaced persons "shall
not suffer disproportionate injuries as a result of programs and
projects designed for the benefit of the public as a whole".  42
U.S.C. sec. 4621(b).  The Relocation Act was then amended in
1987, see Uniform Relocation Act Amendments of 1987, Pub. L. 100-
17, 101 Stat. 246, and is presently codified at chapter 61 of
title 42 of the United States Code.  Chapter 61 is divided into
three subchapters:  Subchapter I--General Provisions, Subchapter
II--Uniform Relocation Assistance, and Subchapter III--Uniform
Real Property Acquisition Policy.

The provision addressing taxation is contained in subchapter
II and reads:

> No payment received under this subchapter shall be
> considered as income for the purposes of title 26; or
> for the purposes of determining the eligibility or the
> extent of eligibility of any person for assistance
> under the Social Security Act [42 U.S.C. 301 et seq.]
> or any other Federal law (except for any Federal law
> providing low-income housing assistance). [42 U.S.C.
> sec. 4636.]

Also within subchapter II, three sections direct that
payments be made to persons displaced in conjunction with Federal
or federally assisted programs.  See 42 U.S.C. secs. 4622, 4623,
and 4624.  Payments for moving and related expenses, see 42

U.S.C. sec. 4622, for replacement housing for homeowners, see 42

U.S.C. sec. 4623, and for replacement housing for tenants and

certain others, see 42 U.S.C. sec. 4624, are the three categories

of payments so authorized.  The section relevant to the instant

case, addressing replacement housing for homeowners, provides in

pertinent part as follows:

> 42 U.S.C. § 4623.  REPLACEMENT HOUSING FOR HOMEOWNER * * *
>
> (a)(1) In addition to payments otherwise authorized by this subchapter, the head of the displacing agency shall make an additional payment not in excess of $22,500 to any displaced person who is displaced from a dwelling actually owned and occupied by such displaced person for not less than one hundred and eighty days prior to the initiation of negotiations for the acquisition of the property.  Such additional payment shall include the following elements:
>
> (A) The amount, if any, which when added to the acquisition cost of the dwelling acquired by the displacing agency, equals the reasonable cost of a comparable replacement dwelling.
>
> (B) The amount, if any, which will compensate such displaced person for any increased interest costs and other debt service costs which such person is required to pay for financing the acquisition of any such comparable replacement dwelling.  Such amount shall be paid only if the dwelling acquired by the displacing agency was encumbered by a bona fide mortgage which was a valid lien on such dwelling for not less than 180 days immediately prior to the initiation of negotiations for the acquisition of such dwelling.
>
> (C) Reasonable expenses incurred by such displaced person for evidence of title, recording fees, and other closing costs incident to the purchase of the replacement dwelling, but not including prepaid expenses.
>
> *    *    *    *    *    *    *

The $22,500 monetary limitation may also be exceeded on a case-by-case basis for good cause.  See 42 U.S.C. sec. 4626(a).

Hence, we are faced with a statute which by its terms exempts from taxation "payment received under this subchapter" and which is contained in a subchapter that explicitly authorizes three types or categories of payment.  It is therefore reasonable to infer that a "payment received under this subchapter" is one of the types of payment that the subchapter enables a displaced person to receive.  Yet it is not this subchapter but rather independent constitutional mandates that enable one whose private property is taken for public use to receive just compensation.

Moreover, the language employed in the provision dealing with replacement housing assistance for homeowners states that the displaced homeowner's entitlement is to "The amount, if any, which when added to the acquisition cost of the dwelling acquired by the displacing agency, equals the reasonable cost of a comparable replacement dwelling."  42 U.S.C. sec. 4623(a)(1)(A).  Nowhere, however, does the statute elaborate upon this concept of acquisition cost or specify how it is to be calculated.  Since in the context in which the law was written, the cost to a governmental entity of acquiring private property was just compensation or fair market value, we must assume that acquisition cost as used in the Relocation Act denotes this constitutionally required just compensation.  Therefore, because

other law is both the source and the sole explanation of a displaced person's right to acquisition cost or just compensation, to say that such payments are "received under" subchapter II of the Relocation Act would defy logic.  We conclude instead that just compensation is not relocation assistance and should not be governed by the tax rules applicable thereto, but it continues to exist as an independent requirement in no way eliminated by the statute under consideration.

Case law emanating from Federal and State courts further supports this interpretation.  For instance, the California Court of Appeal explained the relationship between just compensation and relocation assistance as follows:

> "The 'just compensation' which a condemnee may recover from the condemnor when his property is acquired for a public use pursuant to the eminent domain law, as contemplated by the Constitution and that law alike, is the 'value' (or 'actual value,' or 'fair market value'), measured at a pertinent time * * * ".  * * * Other amounts which may be "compensable" by the public entity under the CRAL [California Relocation Assistance Laws] or the URA [Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970] result from statutory provisions and are independent of the constitutional requirement of "just compensation" * * * [City of Los Angeles v. Decker, 132 Cal. Rptr. 188, 193 (Cal. Ct. App. 1976) (quoting City of Mountain View v. Superior Court, 126 Cal. Rptr. 358, 363 (Ct. App. 1975)).]

A similar view of the Relocation Act's role was taken by the Kansas Court of Appeals, which stated that "the purpose of

federally authorized payments is to supplement traditional eminent domain compensation, not to create an additional element of full compensation." Spackman v. Spackman, 595 P.2d 748, 750 (Kan. Ct. App. 1979).

The U.S. Claims Court likewise emphasized the distinctness and self-contained nature of the Relocation Act when faced with construing the meaning of "payment" for tax-exemption purposes. See Strogoff v. United States, 10 Cl. Ct. 584 (1986), affd. without published opinion 818 F.2d 877 (Fed. Cir. 1987). Although taxpayers argued that, in the exemption section, "Congress used the term in a sense which is broader than the cumulative uses found in the other sections", the court declared that "the least strained reading of the provision is that, following a string of references to payments by government entities, * * * use of the term 'payments' [sic] was intended merely as a shorthand incorporation of the previous references in the statute." Id. at 589.

As regards application and how these legally distinct rights to payment should interact in a factual scenario involving condemnation, the Missouri Court of Appeals summarized:

> In April, 1973, the Commission commenced an action to condemn and acquire appellants' residence and 7.99 acres of ground. That suit, no longer the subject of any dispute, was concluded by entry of a consent judgment in the amount of $38,100.00. Also available to appellants, and conceded by the Commission to be due, is a relocation assistance payment pursuant to the Uniform Relocation Assistance and Real Property

Acquisition Policies Act of 1970, 42 U.S.C. §§ 4601-4655 (1976) applicable to state highway projects by reason of the contribution of federal funds. This relocation payment is defined by statute as that amount which, when added to the acquisition cost of the dwelling taken, equals the cost of a comparable replacement dwelling. 42 U.S.C. § 4623 (1976).

To compute the appropriate sum of relocation assistance, which is subject to a maximum of $15,000.00, it is necessary to determine how much was paid in the condemnation of the property owner's former dwelling and to deduct that amount from the ascertained cost of a replacement dwelling. * * * [Tonnar v. Missouri State Highway & Transp. Commn., 640 S.W.2d 527, 529 (Mo. Ct. App. 1982).]

Therefore, given the history, language, and interpretations of the statute, we hold that only payments expressly authorized by subchapter II and in excess of the just compensation paid for taken property are exempted from taxation by the Relocation Act.

B.   Nature of $65,000 Payment Received by Petitioner

Having determined that the Relocation Act will exempt petitioner's $65,000 payment from taxation only if it is in the nature of relocation assistance rather than just compensation or acquisition cost, we turn to the question of how these proceeds should be characterized.  Contrary to petitioner's averments that the $65,000 was a portion of her relocation assistance, however, we find that the documentary evidence presented indicates otherwise.

First, as a general proposition, the evidence suggests that the policy of the State of South Dakota was to maintain a distinction between fair market value paid for property and

assistance under the Relocation Act.  The South Dakota Relocation Assistance Brochure, prepared for and used by the South Dakota Department of Transportation, explicitly states that the purchase supplement for which a homeowner might be eligible under the statute would be "in addition to the fair market value of your property" and would be calculated based on the price differential between acquisition cost and the cost of a replacement dwelling.

Second, as pertains specifically to petitioner's case, the record produced in the condemnation action reflects that the State in fact followed this general policy of awarding relocation assistance independent and apart from fair market value or acquisition cost.  The Stipulation for Settlement and for Entry of Judgment in Condemnation signed by petitioner in October of 1992 states that "Purchase of the entire lot and house is agreed in the amount of $65,000.00".  The Judgment in Condemnation entered pursuant thereto likewise refers to judgment for the "$65,000.00 determined as just compensation".  Yet both documents contain language expressly declaring that "Relocation Assistance is separate and apart from this agreed compensation and is treated as a separate proceeding."

The ensuing Relocation Assistance Written Offers made to petitioner are consistent with the position that the $65,000 already paid was not considered such assistance.  The initial offer computed petitioner's Replacement Housing

Payment/Supplement at "$00.00" because the cost of a comparable replacement exceeded the sum paid for the displacement property. The revised offer similarly deducted the acquisition cost of $65,000 from the replacement cost of $99,900 to reach a $34,900 Replacement Housing Payment/Supplement.  Hence, subchapter II authorizes "Replacement Housing for Homeowner", and the only amounts designated by these offers as such a Replacement Housing Payment exclude the $65,000.

Moreover, in eventual resolution of the litigation between petitioner and the State, the parties stipulated that "Relocation assistance payment is agreed to be $100,000.00 in addition to the $65,000.00 previously paid".  Again, the $100,000, and not the $65,000, is the figure specifically labeled as relocation assistance.

Taken together, the above documents support a finding that the relocation assistance in petitioner's case was in fact the $100,000 sum negotiated separate and apart from the $65,000 received pursuant to the condemnation judgment.  We further note that to accept petitioner's characterization of the $65,000 as an advance payment of her total relocation assistance would be to say that no just compensation whatsoever was paid by the State. We believe it highly unlikely that the State would so disregard an entrenched constitutional mandate.

In addition, we reject petitioner's apparent contention that the real property acquisition policies set forth in 42 U.S.C. sec. 4651 can or should have a bearing upon our decision. Petitioner alleges that the condemnation proceedings were initiated in violation of these policies, stating on brief that the States's action

> to condemn Petitioner's house and therewith pay her "market value" of the house as just compensation under state law, rather than negotiate compensation equal to the cost of a "comparable replacement dwelling" as was her federal entitlement, was <u>ultra</u> <u>vires</u> and the state condemnation action was thereby void <u>ab</u> <u>inito</u> [sic].

She then goes on to assert that tax-exempt replacement housing compensation should not be transformed into taxable compensation by reason of such an ultra vires action.  In response, we observe that the Relocation Act, 42 U.S.C. sec. 4602(a), declares specifically that "The provisions of section 4651 of this title create no rights or liabilities and shall not affect the validity of any property acquisitions by purchase or condemnation."

We therefore hold that the $65,000 received by petitioner is not a relocation assistance payment exempted from taxation by the Relocation Act but is just compensation taxable to the extent the amount paid exceeded her basis in the condemned property.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.