875 P.2d 820

Horace HESTER, Petitioner Employee,

v.

The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,

Huber, Hunt & Nichol, Respondent Employer,

U.S.F. & G., Respondent Carrier.

No. 1 CA–IC 92–0137.

Court of Appeals of Arizona, Division 1, Department D.

Sept. 28, 1993.

Review Denied June 28, 1994.

Delaney & Melkonoff by Edgar M. Delaney, Phoenix, for petitioner Employee.

Anita R. Valainis, Chief Counsel, Indus. Com'n of Arizona, Phoenix, for respondent.

Junker and Doherty, P.C. by Julie A. Doherty, Phoenix, for respondents Employer and Carrier.

## OPINION

WEISBERG, Judge.

This is a review of an Arizona Industrial Commission ("commission") award denying permanent partial disability benefits for a November 1979 industrial knee injury because a March 1979 industrial back injury had caused either a greater "previous disability" under Ariz.Rev.Stat.Ann. ("A.R.S.") section 23–1044(E) (1983) or a greater earning capacity disability that developed after and was unaggravated by the November 1979 injury. Petitioner employee ("claimant") challenges the sufficiency of the findings, which simply incorporated respondent carrier's ("U.S.F. & G.") post-hearing memorandum, and the sufficiency of the evidence of a "previous disability."

We conclude that the findings are sufficient to permit effective appellate review. Concerning the merits of the award, although we agree with claimant that he did not have a "previous disability" under the statute, we agree with U.S.F. & G. that claimant cannot recover twice for the same disability under *Hoppin v. Industrial Comm'n,* 143 Ariz. 118, 692 P.2d 297 (App.1984). We accordingly affirm the award.

## A. FACTS AND PROCEDURAL HISTORY

Although this review arises out of the November 1979 injury, the parties address both this injury and the earlier one.[1] In March 1979, while working as a form setter for an employer insured by U.S.F. & G., claimant injured his back ("injury # 1"). U.S.F. & G. accepted compensability, and the commission set the average monthly wage at the then applicable statutory maximum. *See* A.R.S. § 23–1041(E). After injury # 1, claimant continuously complained of back and radiating leg pain.

In October 1979, claimant returned to work as a form setter for respondent employer ("Huber"), which also had compensation coverage with U.S.F. & G. In November 1979, claimant injured his left knee ("injury # 2"). U.S.F. & G. accepted compensability for this injury, and the commission again set the average monthly wage at the statutory maximum.

Injury # 2 required multiple knee surgeries. Claimant remained temporarily totally disabled until approximately September 1982, when an independent medical panel from the Southwest Disability Evaluation Center released him to regular work. Meanwhile, *according to claimant, U.S.F. & G. had closed the injury # 1 claim in late 1979 without permanent impairment.*

After the 1982 release, claimant performed his regular work until approximately 1986. U.S.F. & G. subsequently reopened the injury # 2 claim and authorized another knee surgery. It ultimately reclosed this claim with an unscheduled disability. In January 1988, the commission awarded claimant monthly permanent partial disability benefits of $411.05 based upon his capacity to perform light assembly work. *See* A.R.S. § 23–1047.

---

1. We note that the appellate record is limited to a portion of the November 1979 injury claim file. We accordingly must rely on the parties' briefs, which at best include matters outside the record and at worst incompletely redress the omissions in it.

In late 1988 or early 1989, for the first time since injury # 1 was closed, claimant sought medical treatment for his back. The injury # 1 claim was reopened and claimant had lower back surgery. In May 1990, U.S.F. & G. reclosed claim # 1 with permanent impairment.

The commission subsequently issued an award for no loss of earning capacity related to injury # 1, which claimant protested. In September 1991, U.S.F. & G. and claimant settled this dispute. *See generally Safeway Stores, Inc. v. Industrial Comm'n*, 152 Ariz. 42, 48, 730 P.2d 219, 225 (1986) (approving post-compensability settlements). They agreed upon monthly permanent partial disability benefits of $514.72; the commission approved this settlement and entered an award for the stipulated monthly permanent partial disability benefit.[2] Claimant waived further review, and the award accordingly became final. *See* A.R.S. § 23–942(D).

Meanwhile, U.S.F. & G. had reopened the injury # 2 claim in August 1990 and authorized additional knee surgery. It reclosed the claim in June 1991. Claimant's treating physician imposed the same functional limitations as he had in 1987. U.S.F. & G. relied on this medical evidence to recommend that the commission deny additional permanent partial disability benefits for injury # 2:

> Before the Industrial Commission can enter a Findings and Award with respect to applicant's loss of earning capacity in this case, it must consider applicant's prior March 13, 1979 back injury and the loss of earning capacity applicant suffered as a result of that injury. Under Arizona law, the Industrial Commission must calculate applicant's total loss of earning capacity and then deduct any loss attributable to a prior injury. *Hoppin v. Industrial Comm'n*, 143 Ariz. 118, 692 P.2d 297 (App. 1984). An applicant is entitled to additional compensation benefits for a subsequent injury only if that subsequent injury causes an additional loss of earning capacity.

> [Based upon the stipulated loss of earning capacity for the March 1979 injury] ..., applicant's earning capacity with respect to his knee is greater than his earning capacity with respect to his back. In other words, applicant ha[s] not sustained any additional loss of earning capacity as a result of this injury. Accordingly, applicant is not entitled to any additional compensation benefits by virtue of his knee injury.

The commission rejected this argument. Because claimant's functional limits were unchanged, it awarded him the same loss of earning capacity it had previously awarded him in January 1988. Claimant accordingly would be entitled to receive monthly disability benefits of $411.05 under this award and $514.72 under the September 1991 award for the same disability to work as a form setter.

U.S.F. & G. requested a hearing. At the hearing, evidence was introduced concerning claimant's injuries and earning capacity. The parties then submitted legal memoranda. U.S.F. & G. argued that in calculating the disability from injury # 2, the commission must deduct the disability from injury # 1 because claimant either had a greater "previous disability" under A.R.S. section 23–1044(E) or had a greater "earning capacity disability under the second scenario discussed in *Hoppin*."

The Administrative Law Judge ("A.L.J.") then issued the award for no loss of earning capacity "[f]or the reasons and pursuant to the authority set forth in ... [U.S.F. & G.'s] memorandum...." Claimant requested review and asserted that this finding is insufficient. The A.L.J. summarily affirmed the award. Claimant then brought this special action.

## B. DISCUSSION

### 1. Insufficient Findings

■ On review, claimant first asserts that the finding is insufficient, citing *Post v. Industrial Comm'n*, 160 Ariz. 4, 770 P.2d 308 (1989). We disagree. Under *Post*, the ulti-

---

**2.** Settlements often exchange lump sum payments for withdrawals of protests of no loss awards, which accordingly become final. We express no opinion whether such a settlement would permit the carrier to claim a double payment.

mate test of the sufficiency of findings is whether the reviewing court can "determine the factual basis of . . . [the A.L.J.'s] conclusion or whether it was legally sound." *Id.* at 7, 770 P.2d at 311. In the current case, the findings incorporate U.S.F. & G.'s memorandum. We can determine whether the factual assumptions and legal arguments in this memorandum support the no loss award. Moreover, even if we reject one of U.S.F. & G.'s arguments, we must affirm if, as in this case, an alternative argument supports the award. *See, e.g., Scroggins v. Industrial Comm'n,* 123 Ariz. 35, 36, 597 P.2d 188, 189 (App.1979).

### 2. Application of Statute

[3] Claimant denies that he had a "previous disability" under A.R.S. section 23–1044(E). This subsection provides as follows:

> In case there is a *previous disability,* . . . the percentage of disability for a subsequent injury shall be determined by computing the percentage of the entire disability *and deducting therefrom the percentage of the previous disability* as it existed at the time of the subsequent injury.

A.R.S. § 23–1044(E) (emphasis added).

The parties agree that "disability" in this context means earning capacity disability. *See, e.g., Hoppin v. Industrial Comm'n,* 143 Ariz. at 121, 692 P.2d at 300. They dispute whether or not claimant actually was earning capacity disabled when he suffered injury # 2. In our opinion, we need not decide whether sufficient evidence supports the A.L.J.'s resolution of this dispute in favor of U.S.F. & G. Because the injury # 1 claim was open in November 1979, the most that U.S.F. & G.'s argument establishes is that injury # 1 had temporarily disabled him at the time he suffered his knee injury. U.S.F. & G. has cited no authority that holds that a temporary disability can be a "previous disability" under section 23–1044(E). Cases discussing the effect of the order in which claims are closed suggest that an industrial injury must cause a permanent impairment to be a "previous disability" under A.R.S. section 23–1044(E). These cases require a

second injury that becomes stationary to be held open until a prior injury becomes stationary. *See, e.g., Gates v. Industrial Comm'n,* 118 Ariz. 521, 522–24, 578 P.2d 602, 603–05 (1978); *All Star Coach, Inc. v. Industrial Comm'n,* 115 Ariz. 335, 336–38, 565 P.2d 515, 516–18 (1977). Interpreting this section in the context of permanent partial disability benefits, we conclude that section 23–1044(E) applies only when a claimant has a *permanent* impairment that is earning capacity disabling when a second injury occurs.

In the current case, U.S.F. & G. closed the injury # 1 claim without permanent impairment in late 1979. Until the 1989 back surgery, claimant was able to work as a form setter unless his knee injury disabled him. Indeed, injury # 2 was the first to disable him permanently. He accordingly did not have a "previous disability" under section 23–1044(E).

### 3. Case Law Analysis

■ Claimant suggests that this conclusion ends our analysis because "there is no Arizona case . . . that indicates that if a person has a loss of earning capacity because of an earlier unscheduled disability he is not entitled to a loss of earning capacity if he sustains a subsequent injury unscheduled in nature which results in a permanent disability." To the contrary, we believe that *Hoppin* supports U.S.F. & G.'s position.

In *Hoppin,* the claimant had multiple sclerosis. Despite severe impairments, he remained employed until suffering an industrial back injury. This injury did not aggravate the preexisting disease, but the multiple sclerosis progressively worsened after it. *Hoppin,* 143 Ariz. at 119–20, 692 P.2d at 298–99. The court considered the effect of a subsequent disability:

> Separate and apart from the requirements of A.R.S. § 23–1044(D) and (E) relating to previous disabilities, *subsequent disabilities* resulting from unrelated impairments occurring after the injury might develop. If such subsequent unrelated disabilities do occur, further adjustment would have to be made to determine the loss of earning capacity attributable to the industrial injury.

*Id.* at 123 n. 5, 692 P.2d at 302 n. 5 (emphasis added). Applying this principle, the *Hoppin*

court considered the possibility of claimant's multiple sclerosis becoming earning capacity disabling after the back injury:

> [T]he industrial injury would not be a proximate cause of that portion of the disability attributable to the natural progression of the unrelated and unaggravated multiple sclerosis. In arriving at the employee's compensable loss of earning capacity, the administrative law judge would be required to eliminate the disabling effects of the multiple sclerosis and determine the employee's loss of earning capacity based solely on the impairments resulting from the industrial injury.

*Id.* at 125, 692 P.2d at 304 (citations omitted); *see also Lazarin v. Industrial Comm'n,* 135 Ariz. 369, 372–73, 661 P.2d 219, 22–23 (App. 1983) (impairment due to industrial injury must be determined without regard to nonindustrial injury, then apportioned so that the recovery is only for industrial injury disability). Thus, a claimant cannot recover twice for loss of the same earning capacity. If concurring industrial causes produce a disability, the total amount of lost earning capacity limits a claimant's recovery.

We conclude that the instant case is most like the described hypothetical from *Hoppin.* Instead of a worsening nonindustrial condition such as multiple sclerosis, however, claimant's first industrial injury worsened and became earning capacity disabling. When considering the award for injury # 2, the A.L.J. had to eliminate the disabling effects of injury # 1. Claimant has already been compensated for his disability to work as a form setter. *Hoppin* therefore applies and prevents claimant from receiving a double recovery.

### Conclusion

For these reasons, we affirm the award denying claimant additional permanent partial disability benefits for the November 1979 industrial injury.

McGREGOR, P.J., and GRANT, J., concur.