875 P.2d 839

Vincent **MADRID**, Petitioner,

v.

The **INDUSTRIAL COMMISSION OF ARIZONA**, Respondent,

Basha's, Respondent Employer,

**State Compensation Fund**, Respondent Carrier.

Vincent **MADRID**, Petitioner,

v.

The **INDUSTRIAL COMMISSION OF ARIZONA**, Respondent,

Basha's, Respondent Employer,

**CIGNA/Aetna Fire Underwriters**, Respondent Carrier.

No. 1 CA–IC 92–0174.

Court of Appeals of Arizona, Division 1, Department B.

Jan. 20, 1994.

Review Denied June 28, 1994.

(2) the apportionment constituted an unconstitutional reduction of compensation under art. XVIII, § 8, Ariz. Const.; and (3) the apportionment was unauthorized under Arizona law and therefore was erroneous.

Because we resolve this case on the third issue raised, we do not reach the first two. Nor do we determine whether the Commission properly apportioned liability between the carriers.

## A. FACTUAL AND PROCEDURAL HISTORIES

In 1973, while working for respondent employer (Bashas'), claimant injured his right knee at a time when his average monthly wage was $709.11. Mission Insurance Co. (Mission), the carrier responsible for this claim, accepted compensability and in 1979 closed the claim with a 35% scheduled disability.

Claimant returned to regular work for Bashas'. On March 13, 1980, he injured his right arm at work. His average monthly wage had increased to $1,250.00, the then applicable statutory maximum. *See generally* A.R.S. § 23–1041(E) (Supp.1971–79). At the time of this second injury, Bashas' compensation carrier was CIGNA/Aetna Fire Underwriters (Aetna), which accepted compensability.

After being placed on temporary partial disability, claimant returned to work. In January 1981, claimant reinjured his right arm, and Aetna processed the reinjury as part of the still open claim. Claimant has not worked since 1983. Since then, Aetna has paid claimant temporary total compensation of $833.33 per month.

On August 14, 1985, Mission, pursuant to a petition, reopened the right knee injury claim and began paying claimant temporary total disability compensation of $472.74 per month. At the same time, claimant also was receiving $833.33 per month from Aetna.

On May 13, 1986, the Commission's claims manager, Marjorie L. Dight (Dight),[1] wrote the carriers a letter that brought to their attention that they were both paying claim-

Cecil A. Edwards, Jr., Phoenix, for petitioner.

Anita R. Valainis, Chief Counsel, Industrial Comm'n of Arizona, Phoenix, for respondent.

Jones, Skelton & Hochuli by Charles G. Rehling, Phoenix, for respondent Carrier State Compensation Fund.

Long, Lester & Lundmark by Steven C. Lester, Phoenix, for respondent Employer and respondent Carrier CIGNA/Aetna Fire Underwriters.

## OPINION

JACOBSON, Presiding Judge.

In this review of an award of the Industrial Commission (Commission), we must determine whether claimant is entitled to collect total temporary disability from two carriers as the result of two separate and distinct injuries. The Commission apportioned compensation between the two carriers and awarded them a credit for overpayment. Claimant sought review claiming:

(1) the apportionment resulted in taking claimant's property without due process;

1. Dight was the Commission's claims manager for 19 years until her retirement in May 1989.

ant total temporary disability benefits. Dight proposed an apportionment of liability between the carriers based upon the respective average monthly wage at the time of the respective injuries, the total, however, not to exceed 66⅔% of the highest monthly wage that was applicable. The letter concluded, "I hope this letter explains the apportionment of compensation when multiple claims are being processed simultaneously. If you have any questions concerning this matter, please feel free to contact me." A copy of the letter was sent to claimant.

In accordance with this letter and without issuing notices of claim status, the carriers apportioned their liability for temporary disability compensation to claimant. Claimant, under the scheme, received $833.33 per month. Mission subsequently failed, and the State Compensation Fund (Fund) became responsible for Mission's liability. *See generally* A.R.S. § 23–966(A). Effective January 6, 1988, the Fund reclosed the right knee injury claim with a 55% impairment and a scheduled disability, and ceased paying compensation. Aetna resumed total responsibility for unapportioned temporary disability compensation of $833.33 per month.

Effective April 13, 1990, the Fund reopened the right knee injury claim for a second time. Claimant's disability status again was temporary total. According to the Fund's claims representative, she contacted claimant, who informed her that he no longer was receiving compensation from Aetna. The Fund accordingly paid unapportioned temporary total disability compensation until May 22, 1991, when the Fund reclosed the claim.

Actually, Aetna had continued to pay claimant unapportioned temporary disability compensation during this period. Both carriers subsequently discovered the other's unapportioned compensation payments and demanded repayment from claimant. The Fund thereafter issued a notice of claim status determining that claimant owed the Fund

$1,986.48. Aetna, however, did not issue a similar notice.

Claimant then retained his current counsel, who protested the notice of overpayment and requested a Commission investigation of Aetna's apportionment of claimant's temporary disability benefits. *See generally* A.R.S. § 23–1061(J).[2] The Commission referred the matter for hearing, and the two matters eventually were consolidated.

At the hearing, Dight testified that her May 13, 1986 letter reflected longstanding Commission policy. She could not recall when or on what basis the Commission had adopted this policy; the apportionment formula was "simply something with which I have been familiar as long as I can remember in working claims." She explained that the letter was not a formal order with a protest period, but rather "simply a means of assisting the carriers, [which is] one of the primary ... responsibilities of the claims manager...."

The administrative law judge issued an award approving apportionment of temporary disability compensation and awarding the Fund and Aetna credits for their overpayments.

After modifying the award to correct factual findings, the administrative law judge affirmed. Claimant brought this special action.

## B. DISCUSSION

In response to claimant's arguments, set forth above, Aetna and the Fund respond by arguing that claimant cannot recover twice for the same loss of earning capacity.

A recent opinion of this court, *Hester v. Industrial Commission,* 178 Ariz. 587, 875 P.2d 820 (App.1993), supports the carriers' argument. In *Hester,* the claimant, a form setter by trade, injured his back and knee in separate industrial accidents. After reopenings involving both claims, the Commission awarded the claimant $515.00 monthly per-

---

**2.** This subsection provides that:

The commission shall investigate and review any claim in which it appears to the commission that the claimant has not been granted the benefits to which such claimant is entitled. If

the commission determines that payment or denial of compensation is improper in any way, it shall hold a hearing pursuant to § 23–941 within sixty days after receiving notice of such impropriety.

manent partial disability compensation with respect to the back injury and $411.00 monthly permanent partial disability compensation with respect to the knee injury. After administrative hearings, however, an administrative law judge accepted the carrier's argument that it could offset the greater loss of earning capacity against the lesser loss. *Id.* at 590, 875 P.2d at 823.

On appellate review, this court rejected the claimant's argument that he must be compensated for both the back and the knee injuries:

> [A] claimant cannot recover twice for loss of the same earning capacity. If concurring industrial causes produce a disability, the total amount of lost earning capacity limits a claimant's recovery.

*Id.* at 591, 875 P.2d at 824; *see also Hoppin v. Industrial Comm'n,* 143 Ariz. 118, 692 P.2d 297 (App.1984).

Professor Larson agrees with this analysis:

> There is both a theoretical and a practical reason for the holding that awards for successive or concurrent permanent injuries should not take the form of weekly payments higher than the weekly maxima for total disability. The theoretical reason is that, at a given moment in time, a person can be no more than totally disabled. The practical reason is that if he is allowed to draw weekly benefits simultaneously from a permanent total and a permanent partial award, it may be more profitable for him to be disabled than to be well—a situation which compensation law always studiously avoids in order to prevent inducement to malingering.

2 A. Larson, *The Law of Workmen's Compensation* § 59.41(a) (1993).

■ We likewise agree that, where a compensation scheme is based upon a loss of earning capacity, a claimant has only one earning capacity, that is, the amount that he is able to earn. His earning capacity does not double merely because he has two injuries that affect that capacity. Therefore, he is only entitled to be compensated for that one total loss of earning capacity.

■ Claimant concedes that this is true when dealing with temporary partial and permanent partial disability compensation that are compensable based on loss of earning capacity. *Compare* A.R.S. § 23–1044(A) (allowing temporary partial compensation of two-thirds of difference between average monthly wage and wage claimant able to earn after injury) *with* A.R.S. § 23–1044(C) (allowing permanent partial compensation of 55% of difference between average monthly wage and the amount representing earning capacity after injury). However, he argues that *temporary total* disability compensation is not based on loss of earning capacity, but rather is based on "strictly a medical assessment." In other words, according to claimant, the fact and severity of the injury justify compensation.

To support this argument, claimant relies on the literal terms of the statute governing temporary total disability compensation, which provides:

> A. For temporary total disability the following compensation *shall* be paid:
>
> 1. If there is no one residing in the United States totally dependent upon the employee at the time of the injury, compensation of sixty-six and two-thirds per cent of the average monthly wage *shall* be paid during the period of disability.
>
> 2. If there are persons residing in the United States totally dependent for support upon the employee, . . . [compensation augmented by monthly dependents' allowance of $10.00]. . . .

A.R.S. § 23–1045(A) (emphasis added). We disagree that the mandatory and unqualified language of this subsection implies that temporary total disability compensation is not based on loss of earning capacity. To the contrary, the statutory language is mandatory and unqualified because the industrial injury at the total temporary stage causes a total loss of earning capacity. *See, e.g., Hardware Mut. Cas. Co. v. Industrial Comm'n,* 17 Ariz.App. 7, 9, 494 P.2d 1353, 1355 (1972) ("Our workmen's compensation laws contemplate that an injured employee might pass physically through three stages following his injury: (1) a period of temporary total physical incapacity during which time his injuries would prohibit him from working at all. . . ."); *accord* 1C A. Larson, *supra,* § 57.11 ("the distinctive feature of the compensation system, by contrast with tort liability, is that its awards, apart from medi-

cal benefits, ... are made not for physical injury as such, but for 'disability' produced by such injury"); *see also id.* § 57.12(a), (b).

Because temporary total disability compensation is based on loss of earning capacity, we agree with the holding in *Hester.* The administrative law judge correctly determined that claimant was not entitled to recover twice for the same loss of earning capacity.

■ Having determined that claimant is entitled to receive only the benefits necessary to compensate him for his loss of earning capacity, we conclude that he has no standing to question how, as between the carriers, that compensation is paid. As Aetna correctly contends, the only party aggrieved by the apportionment is the Fund, which has acquiesced in the current award apportioning claimant's disability compensation in part to the Fund.

■ As to claimant's constitutional argument, if claimant is not entitled to recover twice for the same loss of earning capacity, his benefits have not been reduced and article XVIII, section 8 of the Arizona Constitution does not apply.

■ The double recovery argument also answers claimant's due process argument. The right to receive the workers' compensation benefits provided by law is a property right, *see, e.g., United Riggers Erectors v. Industrial Commission,* 131 Ariz. 258, 262, 640 P.2d 189, 193 (App.1981), and "any procedure which deprives an individual of a property interest must satisfy due process," *Mervyn's, Inc. v. Superior Court,* 144 Ariz. 297, 300, 697 P.2d 690, 693 (1985). However, because claimant is not entitled to recover twice for the same loss of earning capacity, neither Aetna nor the Fund have taken his property.

For the foregoing reasons, we affirm the award.

LANKFORD and CONTRERAS, JJ., concur.