Samuel J. **CASALVERA, Sr.,** Plaintiff,

v.

**COMMISSIONER OF SOCIAL SECURITY,** Defendant.

**Civil Action No. 95–754–LON.**

United States District Court, D. Delaware.

March 11, 1998.

Samuel J. Casalvera, Sr., pro se.

Patricia C. Hannigan, U.S. Attorney's Office, Wilmington, DE, for Defendant.

## *OPINION*

LONGOBARDI, Senior District Judge.

Plaintiff Samuel Casalvera brought this action pursuant to 42 U.S.C. § 405(g), for review of a decision by the Commissioner of the Social Security Administration ("Commissioner") denying his application for retirement insurance benefits. The Commissioner found that plaintiff's benefits were properly suspended pursuant to 20 C.F.R. § 404.468(a), because of plaintiff's incarceration for a felony conviction. (R. 12–15). The Commissioner also found that the suspension of plaintiff's benefits was not unconstitutional. *Id.*

In the present action, plaintiff raises two grounds on which he asserts that the decision of the ALJ should be set aside. Plaintiff contends that the statute and regulation denying benefits to those incarcerated for a felony conviction violates the Ex Post Facto Clause and the equal protection component of the Due Process Clause of the Fifth Amendment. Presently before the Court is defendant's motion for summary judgment. For the reasons stated herein, the Court will grant this motion.

### I. *Background*

The material facts in this case are not in dispute. Plaintiff has been incarcerated at the State Correctional Institute at Smyrna, Delaware since 1977. (R. 35, 52–53, 56). Plaintiff is serving a life sentence without parole resulting from his conviction of first degree murder and possession of a deadly weapon during the commission of a felony. *Id.*

Plaintiff filed an application for retirement insurance benefits on May 23, 1988, based on his having reached the age of 62. (R. 45–46). In this application, plaintiff listed his mailing address as 108 Netherfield Rd., Wilmington, Delaware. Plaintiff did not mention that he was incarcerated at the time of his application for conviction of a felony. *Id.* Plaintiff received monthly retirement insurance benefits from the time of his application until the Social Security Administration took action to suspend them on December 11, 1991, after a computer-check revealed that he was incarcerated. (R. 47–47A, 49).

Plaintiff filed a timely request for a hearing on the suspension. (R. 61–63). After the Appeals Council remanded two previous decisions rendered without an oral hearing, an Administrative Law Judge ("ALJ") held a hearing on plaintiff's claims on May 9, 1995. (R. 32–41). Plaintiff appeared and testified at the hearing. *Id.* In a decision dated June 5, 1995, the ALJ denied plaintiff's claims in a written decision, concluding that plaintiff's benefits had been properly suspended pursuant to 42 U.S.C. § 402(x) and 20 C.F.R. § 404.468. (R. 12–15). The ALJ also held that section 402(x) was constitutional in that it did not violate the Ex Post Facto Clause or plaintiff's equal protection and due process rights. (R. 12–15).

On October 30, 1995, the Appeals Council denied plaintiff's request for review. (R. 4–5). The ALJ's decision is therefore the final decision of the Commissioner in this matter.

### II. *Standard of Review*

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." There are no material facts in dispute; the issues before the Court raise only questions of law. This Court exercises plenary review over legal determinations made by the ALJ. *See Wright v. Sullivan,* 900 F.2d 675, 678 (3d Cir.1990); *Podedworny v. Harris,* 745 F.2d 210, 221 n. 8 (3d Cir. 1984).

### III. *Discussion*

#### A. *Applicable Law*

Prior to 1980, an otherwise qualified prisoner was eligible for Social Security disability and retirement benefits. In 1980, Congress amended Section 223 of the Social Security Act to suspend disability benefits to convicted felons confined in jail, prison, or other penal institution or correctional fa-

cility, during the period of confinement. Act of October 19, 1980, Pub.L. No. 96–473, § 5(a)(1), 94 Stat. 2264–65 (repealed 1983). This provision excepted from suspension benefits paid to a felon who was actively participating in a rehabilitation program and was expected to engage in substantial gainful activity upon release within a reasonable time. *Id.* The new provision also excepted from suspension auxiliary benefits payable to a prisoner's dependents. *Id.*

The purposes for this amendment are explained in the Senate Report accompanying the bill proposing the amendment. The Report provides:

> The committee believes that the basic purposes of the social security program are not served by the unrestricted payment of benefits to individuals who are in prison or whose eligibility arises from the commission of a crime. The disability program exists to provide a continuing source of monthly income to those whose earnings are cut off because they have suffered a severe disability. The need for this continuing source of income is clearly absent in the case of an individual who is being maintained at public expense in prison.

S.Rep. No. 96–987, at 7–8 (1980), 1980 U.S.C.C.A.N. 4787.

In 1983, Congress repealed the aforementioned provision and, as a substitute, amended section 202 of the Social Security Act to add subsection (x). Employing the same language used in the 1980 provision, Congress expanded the suspension on social security benefits to include retirement, as well as, disability benefits. Social Security Amendments of 1983, Pub.L. No. 98–21, § 339(a), 97 Stat. 133, 42 U.S.C. § 402(x) (amended 1994). Subsection (x) retained the two exceptions contained in the 1980 provision. *Id.*

The legislative history of 42 U.S.C. § 402(x) does not further address the purposes for the suspension of benefits to incarcerated felons. It does, however, state that the 1983 amendment was intended to expand the restriction for incarcerated individuals contained in the current law to include old age and survivors' insurance benefits. H.R.Rep. No. 98–47, at 157–58 (1983).

Congress completed revised section § 402(x) in 1994. *See* Act of October 22, 1994, Pub.L. No. 103–387, § 4(a), 108 Stat. 4076 (1994). Although retaining the same basic prohibition against the receipt of benefits by incarcerated felons, the law broadened this limitation for incarcerated individuals and extended it to include criminally insane individuals confined to institutions. *See* H.R.Rep. No. 103–491, at 7–8 (1994), 1994 U.S.C.C.A.N. 3266. The current version of section 402(x) provides in relevant part:

> (A) Notwithstanding any other provision of this title, no monthly benefits shall be paid under this section or under section 423 of this title to any individual for any month during which such individual—
>
> (i) is confined in a jail, prison, or other penal institution or correctional facility pursuant to his conviction of an offense punishable by imprisonment for more than 1 year (regardless of the actual sentence imposed). . . .
>
> (B)(i) . . . [A]n individual shall not be considered confined in an institution comprising a jail, prison, or other penal institution or correctional facility during any month throughout which such individual is residing outside such institution at no expense (other than the cost of monitoring) to such institution or the penal system or to any agency to which the penal system has transferred jurisdiction over the individual.

42 U.S.C. § 402(x)(1). In addition, the current statute retains the exception for auxiliary benefits paid to the confined individual's dependants. *Id.* § 402(x)(2).

The 1994 amendment effected two major changes pertaining to incarcerated individuals. First, section 402(x) now applies to all individuals convicted of an offense punishable by imprisonment for more than one year, rather than only those convicted of a felony. The legislative history accompanying the 1994 amendment indicates that in making this change, Congress was attempting to achieve greater consistency in the law, given that the definition of felony varies from state to state. H.R.Rep. No. 103–491. Second, the 1994 amendment abrogated the exception for confined individuals participating in a court-approved rehabilitation program. Ac-

cording to the legislative history, the impetus for this change was the fact that the Secretary of Health and Human Services received and approved few applications pertaining to this exception. *Id.*

### B. *Plaintiff's Claims*

#### 1. *Ex Post Facto Clause*

■ Plaintiff first asserts that the statutory suspension of his retirement insurance benefits constitutes a retroactive application of a punitive measure in violation of the Ex Post Facto Clause of the Constitution. There are two conditions which must be satisfied for a law to be ex post facto. First, the law must be retrospective in that it applies to events occurring before its enactment. *Stiver v. Meko,* 130 F.3d 574, 578 (3d Cir.1997). Second, the change in the law must alter the definition of criminal conduct or increase the penalty by which a crime is punishable. *Id.* Because it is undisputed that the amendments to the Social Security Act at issue did not alter the definition of criminal conduct, the issue with respect to the second prong is whether these amendments "inflict[ ] a greater punishment than the law annexed to the crime when committed." *E.B. v. Verniero,* 119 F.3d 1077, 1092 (3d Cir.1997). Accordingly, there is no ex post facto violation in this case unless the amendments to the Social Security Act constitute an infliction of "punishment." *Id.*

Over the past ten years, usually in the context of a challenge under the Double Jeopardy Clause, the Supreme Court has endeavored to articulate a test for determining whether a particular civil statute imposes what amounts to an unconstitutional criminal punishment.[1] The first of these cases was *United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), in which the Court set forth the "punishment" standard as follows:

> a civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serv-

ing either retributive or deterrent purposes, is punishment, as we have come to understand the term. We therefore hold that under the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as deterrent or retribution.

*Id.* 490 U.S. at 448–49 (citation omitted). In subsequent cases, the opinions redefined, explained, and reshaped the *Halper* test, such that they amounted to no more than protean expressions of creative contrariety. Last month, the Court decided to clear the waters, abandoning *Halper's* "deviation from long-standing double jeopardy principles" as "ill considered" and "unworkable." *Hudson v. U.S.,* —— U.S. ——, 118 S.Ct. 488, 494, 139 L.Ed.2d 450 (1997). In its stead, the Court articulated a two-part standard for determining whether a particular sanction constitutes punishment.

First, a court must ascertain whether the legislature in enacting the sanction in question indicated either expressly or impliedly a preference for a civil or a criminal sanction. *Id.* 118 S.Ct. at 493. In those cases in which the legislature has indicated an intention to establish a civil penalty, a court should then ask "whether the statutory scheme was so punitive either in purpose or effect as to transfor[m] what was clearly intended as a civil remedy into a criminal penalty." *Id.* (quoting *U.S. v. Ward,* 448 U.S. 242, 248, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980); *Rex Trailer Co. v. U.S.,* 350 U.S. 148, 154, 76 S.Ct. 219, 100 L.Ed. 149 (1956)) (alteration in original) (citation omitted) (internal quotation marks omitted).

A court should use the seven factors enumerated in *Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 168–69, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963), as "useful guideposts" in making the latter determination. These factors include: (1) whether the sanction involves an

---

1. The Court Appeals for the Third Circuit has concluded that the definition of "punishment" is the same for purposes of both the Ex Post Facto Clause and the Double Jeopardy Clause. *See Artway v. Attorney Gen. of State of N.J.,* 81 F.3d

1235, 1253 (3d Cir.1996); *see also Kansas v. Hendricks,* —— U.S. ——, 117 S.Ct. 2072, 2086, 138 L.Ed.2d 501 (1997); *Russell v. Gregoire,* 124 F.3d 1079, 1087 n. 6 (9th Cir.1997).

affirmative disability or restraint; (2) whether it has historically been regarded as punishment; (3) whether it comes into play only on a finding of scienter; (4) whether its operation will promote the traditional aims of punishment-retribution and deterrence; (5) whether the behavior to which it applies is already a crime; (6) whether an alternative purpose to which it may rationally connected may be rationally assignable for it; and (7) whether it appears excessive in relation to the alternate purpose assigned. *Hudson,* 118 S.Ct. at 493. The Supreme Court has further made clear that these factors must be considered in light of the statute on its face, and that " 'only the clearest proof' will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *Id.*

■ Applying this analysis to the facts of this case, the Court finds under the first prong that Congress clearly intended the provision precluding felons in confinement from receiving retirement insurance benefits to be civil in nature. Congress has authorized the Commissioner of Social Security to make the initial determination as to an individual's entitlement to insurance benefits. 42 U.S.C. § 405(b)(1). The Supreme Court has indicated that Congress's decision to entrust an administrative agency with the authority to grant or withhold the sanction in question is prima facie evidence that Congress intended to provide for a civil sanction. *Hudson,* 118 S.Ct. at 495. Moreover, Congress expressly provided in the Social Security Act that an individual may obtain review of the decision of the Commissioner by commencing a "civil action" in district court. 42 U.S.C. § 405(g). Accordingly, the Court finds that Congress intended the sanction challenged by plaintiff to be civil in nature.

Under the second prong of the analysis, the Court finds that evidence in this case falls far short of the "clearest proof" of punitive purpose or effect to transform the sanction at issue into criminal punishment. First, a sanction of this type has not historically been regarded as punishment. The Supreme Court has characterized the denial of Social Security benefits as "the mere denial of a noncontractual benefit." *Flemming v.*

*Nestor,* 363 U.S. 603, 616–17, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960) (holding that the provision in the Social Security Act denying benefits to aliens deported on certain statutorily specified grounds did not constitute "punishment" under the Ex Post Facto Clause). The revocation of a privilege voluntarily granted has historically been considered as "free of the punitive criminal element," and thus civil in nature. *Helvering v. Mitchell,* 303 U.S. 391, 399–400, 58 S.Ct. 630, 82 L.Ed. 917 (1938). Additionally, the denial of social security benefits does impose an affirmative disability or restraint. *Flemming,* 363 U.S. at 617.

Moreover, the suspension of social security benefits to those incarcerated is rationally connected to a legitimate non-punitive purpose. The purpose of the Social Security retirement program is to provide a continuous source of benefits to meet the presumed need a wage earner and his or her dependents face when he or she leaves the workforce as a result of old age. *See Califano v. Goldfarb,* 430 U.S. 199, 213, 97 S.Ct. 1021, 51 L.Ed.2d 270 (1977). The need to provide economic assistance to an individual is notoriously absent when, as a result of incarceration, the individual is receiving full support from public resources, including food, clothing, lodging, and basic health care. *See* H.R.Rep. No. 103–491, at 8 (1994).

Finally, the conclusion that the suspension of disability benefits to incarcerated felons does not constitute "punishment" is supported by the fact that every court addressing this issue has found that this provision does not violate the Ex Post Facto Clause. *Wiley v. Bowen,* 824 F.2d 1120, 1122 (D.C.Cir.1987); *Caldwell v. Heckler,* 819 F.2d 133, 134 (6th Cir.1987); *Andujar v. Bowen,* 802 F.2d 404, 405 (11th Cir.1986); *Peeler v. Heckler,* 781 F.2d 649, 651–52 (8th Cir.1986); *Jones v. Heckler,* 774 F.2d 997, 998–99 (10th Cir.1985); *Jensen v. Heckler,* 766 F.2d 383, 386 (8th Cir.1985); *see Davis v. Bowen,* 825 F.2d 799, 800 (4th Cir.1987).

Accordingly, the Court finds that the evidence in this case does not establish that the statutory scheme is so punitive in purpose or effect so as to transform the sanction at issue into a criminal penalty. The Court therefore

holds that the amendments to the Social Security Act suspending the payment of benefits to individuals incarcerated for felony convictions or crimes punishable by more than one year imprisonment do not give rise to a violation of the Ex Post Facto Clause.

### 2. *Equal Protection Clause*

■ Plaintiff also charges that the provision suspending his retirement benefits violates his equal protection rights in that it unlawfully discriminates between felons and misdemeanants. Plaintiff asserts that given the congressional determination that the need to provide social security benefits to individuals in confinement is clearly absent, Congress does not have a legitimate basis for allowing these benefits to be provided to misdemeanants, or, under the new law, individuals incarcerated for crimes carrying a maximum penalty of imprisonment of less than one year. The Due Process Clause of the Fifth Amendment imposes on the federal government the same standard required of state legislation by the Equal Protection Clause of the Fourteenth Amendment. *Schweiker v. Wilson*, 450 U.S. 221, 226 n. 6, 101 S.Ct. 1074, 67 L.Ed.2d 186 (1981). Under the Equal Protection Clause, absent a distinction drawn on the basis of a suspect classification or that interferes with a fundamental right, a federal statute must only be rationally related to a legitimate end of government. *U.S. v. Williams*, 124 F.3d 411, 422 (3d Cir.1997). Because petitioner has not alleged discrimination on the basis of a suspect classification or that he was denied a fundamental right, *see Flemming*, 363 U.S. at 611, the rational basis test is the appropriate standard of review in this case.

Applying rational basis scrutiny, the Court finds that there is a rational basis for the difference in treatment between incarcerated felons and misdemeanants. Convicted misdemeanants are incarcerated for a shorter term of imprisonment than incarcerated felons. Suspending benefits for the short period of time that those convicted of misdemeanors are incarcerated would do little to help preserve the solvency of the social security trust funds. Moreover, the distinction drawn by the legislation avoids the administrative nightmare of the suspension and reinstatement of benefits within a short period of time for the vast number of individuals who are temporarily incarcerated on a misdemeanor conviction. The 1994 amendments, which changed the class of incarcerated individuals whose benefits would be suspended to those convicted of crimes punishable by a term of imprisonment exceeding one year, provide further evidence that the felon-misdemeanant distinction arose from the burdens of short term suspension when contrasted with the benefits to the social security system, rather than a classification rooted in arbitrary or improper basis. Accordingly, the Court concludes Congress's decision to suspend benefits to only those individuals incarcerated on a felony conviction or for crimes which carry a maximum term of imprisonment in excess of one year is rationally related to a legitimate governmental interest. The Court therefore finds that the statute in question does not violate plaintiff's equal protection rights.

### IV. *Conclusion*

For the reasons stated herein, the Court will affirm the decision of the ALJ denying plaintiff's claims for retirement insurance benefits and grant defendant's motion for summary judgment. An appropriate order will follow.