989 P.2d 157

**Guadalupe ARANDA, Petitioner,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Classic Roofing, Inc., Respondent Employer,**

**State Compensation Fund, Respondent Carrier.**

**No. 1 CA–IC 98–0113.**

Court of Appeals of Arizona, Division 1, Department C.

June 24, 1999.

Review Granted Oct. 26, 1999.

Taylor & Associates, P.L.L.C. by Roger A. Schwartz, Phoenix, Attorneys for Petitioner.

Anita R. Valainis, Chief Counsel, The Industrial Commission of Arizona, Phoenix, Attorney for Respondent.

James F. Crane, Chief Counsel, State Compensation Fund by James B. Stabler, Phoenix, Attorneys for Respondents Employer and Carrier.

## OPINION

EHRLICH, Judge.

¶ 1 Guadalupe Aranda filed this special action review of Arizona Industrial Commission decisions upon hearing and review suspending his unscheduled monthly permanent partial disability compensation payments while he is incarcerated. The administrative law judge ("ALJ") applied Arizona Revised Statutes Annotated ("A.R.S.") section 23–1031 (Supp.1998)[1] to suspend the payments as of the statutory date of December 1, 1997, although Aranda was injured, awarded compensation, convicted and incarcerated before then. For the following reasons, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

¶ 2 In 1993, Aranda fell while working. Eventually, he was awarded $630.71 per month in permanent partial disability benefits.[2] However, Aranda has been incarcerat-ed since February 1994, and he will remain so for an indefinite period of time.

¶ 3 In 1997, the legislature passed the statute at issue, A.R.S. section 23–1031:

A.   Except as provided in subsection B of this section, beginning on December 1, 1997, payment of compensation under this chapter shall be suspended during the period of time that the employee has either:

1.   Been convicted of a crime and is incarcerated in any state, federal, county or city jail or correctional facility.

2.   Been adjudicated delinquent and is incarcerated in any state, federal, county or city jail or correctional facility.

B.   If any portion of an employee's payment of compensation under this chapter has been garnished to satisfy support obligations pursuant to title 25, chapter 5, article 1 [section 25–501 *et seq.*], the portion of the compensation that has been garnished shall be paid as provided in the court order. [Footnote omitted.]

¶ 4 In consequence of the passage of this statute, on January 8, 1998, the State Compensation Fund issued Aranda, a single man without dependents, and many others a notice of claim status: "ALL COMPENSATION BENEFITS ARE SUSPENDED PURSUANT TO A.R.S. § [23–1031] effective January 1, 1998." Aranda requested a hearing, but the parties subsequently agreed that there were no factual issues to be resolved and rested on legal memoranda they filed.

¶ 5 Aranda contended then, as he does now, that the Fund misapplied the statute to him because his compensable injury, award of benefits and commencement of incarceration occurred before December 1, 1997. The ALJ disagreed, holding that the statute is not unlawfully retroactive because it does not change the status of Aranda's benefits as they existed before the applicable date. The ALJ further found that the statute was not a forfeiture of benefits because it only suspends the payment of benefits during the term of incarceration. The decision was af-

---

1.   Formerly A.R.S. section 23–1028.01. We will refer to the statute by its present citation.

2.   The Commission retained jurisdiction to rearrange the award as specified in A.R.S. section 23–1044(F) (1995).

firmed upon review, and this special action followed.

## DISCUSSION

### A. Retroactivity

¶ 6 We first consider whether the Arizona Legislature intended to apply the statute retroactively. *E.g., San Carlos Apache Tribe v. Superior Court,* 193 Ariz. 195, 205, 972 P.2d 179, 189 (1999); *Arizona Dep't of Public Safety v. Superior Court (Falcone),* 190 Ariz. 490, 494, 949 P.2d 983, 987 (App.1997). Aranda alleges that the ALJ improperly applied the statute to him retroactively because, before its enactment, he had been receiving his workers' compensation payments although he was incarcerated. He argues that the statute applies only to those who both are awarded benefits and become incarcerated after the statutory date.

¶ 7 Although we consider an administrative agency's interpretation of its guiding statutes, we draw our own legal conclusions. *E.g., Langmade v. Arizona Dep't of Transp.,* 179 Ariz. 309, 311, 878 P.2d 667, 669 (App.1994). The constitutionality of a statute always is analyzed de novo by this court, beginning with the strong presumption that a legislative enactment is constitutional. *E.g., Falcone,* 190 Ariz. at 494, 949 P.2d at 987; *San Carlos Apache Tribe,* 193 Ariz. at 204, 972 P.2d at 188. Indeed, we have a duty to construe a statute so as to render it constitutional if possible, *e.g., Baker v. Superior Court,* 190 Ariz. 336, 341, 947 P.2d 910, 915 (App.1997); *Dunn v. Industrial Comm'n,* 177 Ariz. 190, 194, 866 P.2d 858, 862 (1994), and the party challenging the law bears a heavy burden of establishing the contrary. *E.g., Falcone,* 190 Ariz. at 494, 949 P.2d at 987.

¶ 8 The text of the law is the lodestar. *E.g., San Carlos Apache Tribe,* 193 Ariz. at 204-05, 972 P.2d at 188–89. When interpreting a statute, we heed its clear meaning unless the result is "absurd or impossible." *Dunn,* 177 Ariz. at 194, 866 P.2d at 862. In this regard, the language of A.R.S. section 23–1031 is plain and unambiguous: The payment of workers' compensation benefits to an incarcerated person is suspended as of December 1, 1997, for the duration of that individual's period of incarceration.

¶ 9 Aranda argues that the statute is unconstitutional because it retroactively affects a vested substantive right. "No such prohibition, however, applies to laws that operate on pre-existing conditions, *and such laws are not retrospective by their mere relation to antecedent conditions.*" *Hall v. A.N.R. Freight System, Inc.,* 149 Ariz. 130, 139, 717 P.2d 434, 443 (1986), quoting *Cohen v. State,* 121 Ariz. 6, 9, 588 P.2d 299, 302 (1978)(emphasis original in *Hall* ); *see San Carlos Apache Tribe,* 193 Ariz. at 205, 972 P.2d at 189; *Wood v. Beatrice Foods Co.,* 813 P.2d 821, 823 (Colo.App.1991). "The critical inquiry in retroactivity analysis is not whether a statute affects a substantive right but whether a statute affects a *vested* right. Thus the implicit meaning of the statement 'substantive rights may not be retroactively impaired' is 'substantive rights may not be impaired *once vested.*' " *Hall,* 149 Ariz. at 139–40, 717 P.2d at 443–44 (emphasis original). And a vested right is one that is "actually assertable as a legal cause of action or defense or is so substantially relied upon that retroactive divestiture would be manifestly unjust." *San Carlos Apache Tribe,* 193 Ariz. at 205, 972 P.2d at 189 (citation omitted); *see Wood,* 813 P.2d at 823. We do not find this to be the case.

¶ 10 The Legislature has enacted a statute that does not change the legal consequences of acts completed before the law's statutory date. *San Carlos Apache Tribe,* 193 Ariz. at 205, 972 P.2d at 189; *Falcone,* 190 Ariz. at 494, 949 P.2d at 987; *see Wood,* 813 P.2d at 823. The award of workers' compensation in effect at the time of incarceration remains established. The statute operates to only suspend the payment of those benefits while the recipient is incarcerated. Indeed, workers' compensation payments are otherwise subject to suspension. *See* A.R.S. § 23–1026(C)(1995) (benefits suspended if claimant fails to attend or obstructs medical examination); A.R.S. § 23–1047(D)(1995) (benefits suspended if claimant fails to report annual earnings).

¶ 11 Aranda relies on three cases rejecting a retroactive application of a workers' com-

pensation statute: *Alvarado v. Industrial Comm'n*, 148 Ariz. 561, 716 P.2d 18 (1986); *Bush v. Industrial Comm'n*, 136 Ariz. 522, 667 P.2d 222 (1983); and *Hopkins v. Industrial Comm'n*, 176 Ariz. 173, 859 P.2d 796 (App.1993). In each of these cases, though, a statute had been erroneously interpreted by the Commission to prevent an individual from presenting a claim for benefits or to change the substantive elements for presenting a claim. The statute before us does not deny a person the right to assert a claim. Rather, it serves to suspend payments of an accepted claim during the person's incarceration. When the exception of incarceration ends, so does the suspension.

¶ 12 This resolution is consistent with the holding in *McCormick v. Industrial Comm'n*, 136 Ariz. 155, 664 P.2d 699 (App.1983), in which we upheld the statutory suspension of the payment of permanent disability benefits until the claimant submitted an annual report of income. *See* A.R.S. § 23–1047(D). "Suspend" was defined as "a temporary cessation" of workers' compensation payments. *McCormick*, 136 Ariz. at 157, 664 P.2d at 701.

¶ 13 Aranda also relies on two cases in which this court did not uphold an interruption in workers' compensation payments during incarceration, *Bearden v. Industrial*

*Comm'n*, 14 Ariz.App. 336, 483 P.2d 568 (1971), and *United Riggers Erectors v. Industrial Comm'n*, 131 Ariz. 258, 640 P.2d 189 (App.1981). However, the rationale of these cases actually supports a proposition inimical to Aranda's argument. Their dispositions turned on the failure of the Arizona Legislature to enact a statute permitting the suspension of compensation payments. As was said in *United Riggers Erectors*, 131 Ariz. at 262, 640 P.2d at 193, "[i]n the absence of legislation providing for a suspension of workmen's compensation benefits during periods while the claimant is incarcerated, A.R.S. § 13–904(D) indicates that the imprisonment does not preclude the award of benefits if the employee is otherwise entitled to receive them."[3] *See Bearden*, 14 Ariz.App. at 343, 483 P.2d at 575;[4] *see also State ex rel. Ashcraft v. Industrial Comm'n of Ohio*, 15 Ohio St.3d 126, 472 N.E.2d 1077, 1079 (1984);[5] *Spera v. State*, 713 P.2d 1155, 1158 (Wyo.1986);[6] *Crawford v. Midwest Steel Co.*, 517 So.2d 918, 924 (La.App.1987).[7] Now, with the passage of A.R.S. section 23–1031, the Arizona Legislature has acted and passed the requisite enabling law.

*B. Substantive Due Process*

¶ 14 Aranda argues that he has been unconstitutionally deprived of substantive due

---

3. At that time, A.R.S. section 13–904(D)(1978) provided in pertinent part: "The conviction of a person for any offense shall not work forfeiture of any property, except if a forfeiture is expressly imposed by law."

4. This court said:
    We hold that the Arizona Legislature has not provided for the forfeiture or suspension of compensation and accident benefits during the period of the prison confinement of a claimant serving a sentence less than life.
    *Id.*

5. In response to an Industrial Commission order suspending the payment of workers' compensation benefits while an individual was incarcerated, the court said:
    The policy to be served by the terms of the resolution is not repugnant to the purposes of the Workers' Compensation Act, in that it would preclude the payment of benefits to claimants who, regardless of a prior industrial injury, are unable to work because they are incarcerated. Such a policy decision, however, must emanate from the General Assembly.

*Id.*

6. Finding a worker's benefits a contract right akin to insurance, the court said:
    Because there is no statutory exception which eliminates benefits when a worker is jailed, the benefits are due the worker even if his needs are fulfilled from another governmental source. The state legislature can change our statute to suspend payments during periods of incarceration. . . . But in the absence of legislation, we decline the State's invitation to make that policy shift ourselves.
    *Id.*

7. The court said:
    Ultimately, we are of the opinion that the authority to suspend or forfeit an injured worker's entitled to worker's compensation benefits must be expressly provided by statute or, at the very least, necessarily implied from a reading of the statute as a whole. . . . We find no authority in the Act for the proposition that an incarcerated injured worker's benefits may be suspended or forfeited during the period of his confinement.
    *Id.* (citations omitted).

process, to which he would have us apply strict scrutiny. The State Compensation Fund maintains that we need only find that the statute has a rational basis to uphold it. We agree with the Fund.

The constitution prohibits the abrogation of rights of action to recover damages for injuries. Ariz. Const. art. 18, § 6. However, because of the exception to art. 18, § 6 contained in art. 18, § 8, the state may deprive a worker of a cause of action for industrial injuries if, by failing to elect out of the workers' compensation scheme, the worker has compensation benefits.

*Dunn,* 177 Ariz. at 196, 866 P.2d at 864.

¶ 15 Although workers' compensation payments are property, *United Riggers Erectors,* 131 Ariz. at 262, 640 P.2d at 193, they are not fundamental rights in the sense of the Constitution but statutory benefits provided by and to the extent of the legislation. *See Wood,* 813 P.2d at 824. If this were not so, a suspension of payments would not be a matter of either legislation, *e.g.,* A.R.S. §§ 23–1026(C), 23–1047(D), or a legislative cure for a perceived ill as was made available in *United Riggers Erectors,* 131 Ariz. at 262, 640 P.2d at 193, and *Bearden,* 14 Ariz.App. at 343, 483 P.2d at 575; *see Ashcraft,* 472 N.E.2d at 1079; *Spera,* 713 P.2d at 1158; *Crawford,* 517 So.2d at 924. Nor would the payments be community property. *Bugh v. Bugh,* 125 Ariz. 190, 192, 608 P.2d 329, 331 (App.1980), citing *Dawson v. McNaney,* 71 Ariz. 79, 223 P.2d 907 (1950). Thus, strict scrutiny is not required. Rather, the correct standard of review is the rational basis test. "Social and economic legislation that does not involve a suspect classification or a fundamental right will be upheld when it is rationally related to a legitimate government purpose." *Church v. Rawson Drug & Sundry Co.,* 173 Ariz. 342, 350, 842 P.2d 1355, 1363 (App.1992); *see Lavine v. Milne,* 424 U.S. 577, 584 n. 9, 96 S.Ct. 1010, 47 L.Ed.2d 249 (1976) (right to receive subsistence funds not fundamental); *Wood,* 813 P.2d at 824 (workers' compensation payments not a matter of fundamental right). To fail this test, the statute must be entirely unrelated to a legitimate legislative goal. *Church,* 173 Ariz. at 350, 842 P.2d at 1363.

¶ 16 The enactment of A.R.S. section 23–1031 is consistent with the underlying purposes of the Workers' Compensation Act "to compensate an employee for lost earning capacity and to prevent the injured employee and dependents from becoming public charges during the period of disability." *Mail Boxes, etc., U.S.A. v. Industrial Comm'n,* 181 Ariz. 119, 121, 888 P.2d 777, 779 (1995); *see Madrid v. Industrial Comm'n,* 178 Ariz. 606, 609–10, 875 P.2d 839, 842–43 (App.1994). "Lost earning capacity" means "in lieu of lost wages and not as damages for pain, suffering and monetary loss caused by the fault of the employer." *Bugh,* 125 Ariz. at 192, 608 P.2d at 331, quoting *Sorenson v. Six Companies,* 53 Ariz. 83, 90, 85 P.2d 980, 983 (1939); *cf. Spera,* 713 P.2d at 1156–57; *but see Sims v. R.D. Brooks, Inc.,* 389 Mich. 91, 204 N.W.2d 139, 140–41 (1973)(Under Workmen's Compensation Act, it is the loss of wage-earning capacity which is compensable, and an award of compensation is not affected by the claimant's later imprisonment.).

¶ 17 In *Wood,* a Colorado statute similar to that passed by the Arizona Legislature was upheld. 813 P.2d at 824. The court viewed workers' compensation as a means of protecting a person injured in the course of his employment from becoming a ward of the state by providing industry compensation to the extent of the loss of that individual's earning capacity. *Id.; see Dunn,* 177 Ariz. at 194, 866 P.2d at 862 ("The workers' compensation laws should be construed with a view toward advancing the purpose of placing the burden of injury and death upon industry."). It analyzed the history of the statute suspending benefits to prisoners as indicative of "an intent to remedy the perceived unfairness of requiring employers and insurance carriers to pay benefits as compensation for lost earning capacity to persons who have no earning capacity because their imprisonment has removed them from the work force." 813 P.2d at 823. The court concluded that the "disparate treatment of prisoners and non-prisoners is founded on real differences rationally related to the purposes of workers'

compensation." *Id.* at 824.[8]

¶ 18 Comparable reasoning was used in *Johnson v. RSG Forest Products*, 129 Or. App. 192, 878 P.2d 449, 451–52 (1994). The court denied workers' compensation to an inmate whose conviction ultimately was vacated because, while he was incarcerated, he was unable to work.

¶ 19 The court in *Ashcraft*, 472 N.E.2d at 1079, also suggested that a policy of suspending the payment of workers' compensation benefits would be consistent with the purposes of Ohio's Workers' Compensation Act were enabling legislation to be passed. Persons who are incarcerated are "unable to work." *Id.*; *see* footnote 5, *supra.*

■ ¶ 20 A worker with a loss of earning capacity is entitled to compensation to the extent and for the period of that loss. The purpose of workers' compensation is to give a worker compensation in an amount that, when added to that derived from his remaining earning capacity, allows him to be self-sufficient. Obviously, an incarcerated person, by committing a crime, has removed himself from the labor market for as long as he is incarcerated. Upon his release from prison, when the individual returns to the labor market, his payments will resume so as to enable him to be self-sufficient to the same degree as other non-prisoners.

¶ 21 The suspension of compensation while the worker is incarcerated is rationally related to the policies underlying its provision. There is no violation of a substantive due process right.

### C. Procedural Due Process

■ ¶ 22 Aranda seemingly complains also of a lack of procedural due process.

"[A]ny procedure which deprives an individual of a property interest must satisfy due process," *Madrid*, 178 Ariz. at 610, 875 P.2d at 843, quoting *Mervyn's, Inc. v. Superior Court*, 144 Ariz. 297, 300, 697 P.2d 690, 693 (1985), requiring such notice and opportunity to be heard before the suspension of payments as were undeniably given Aranda. *See, e.g., Fuentes v. Shevin*, 407 U.S. 67, 80, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Goldberg v. Kelly*, 397 U.S. 254, 267, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); *Salas v. Arizona Dep't of Econ. Sec.*, 182 Ariz. 141, 143, 893 P.2d 1304, 1306 (App.1995). He was afforded the requisite due process.

### D. Ex Post Facto

¶ 23 Aranda alleges that A.R.S. section 23–1031 constitutes an illegal ex post facto law. "Ex post facto laws are laws that change punishment and inflict a greater punishment than laws annexed to the crime when committed, and laws which alter elements of the crime and authorize the receipt of less or different evidence than required at the time of commission of the offense in order to convict the offender." *State v. Sanders*, 124 Ariz. 318, 320, 604 P.2d 20, 22 (App.1979); *see DeVeau v. Braisted*, 363 U.S. 144, 80 S.Ct. 1146, 4 L.Ed.2d 1109 (1960); *Flemming v. Nestor*, 363 U.S. 603, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960); *Falcone*, 190 Ariz. at 494, 949 P.2d at 987; *Wood*, 813 P.2d at 823. Section 23–1031 is not a criminal statute, nor does it alter the elements of a crime, change the evidentiary requirements or manifest an intent to inflict a greater punishment. Its passage is not violative of the *ex post facto* clause.[9]

---

**8.** The court in *Spera* rejected a similar statute in the absence of legislation authorizing the suspension of worker's compensation payments, although it did not foreclose upholding such a law were it to be passed. In so doing, though, it implicitly joined what the Arizona Supreme Court said in *Dunn:* that the workers' compensation scheme is one premised upon placing the "burden of injury and death upon industry." 177 Ariz. at 194, 866 P.2d at 862. Using a contract analysis, the court in *Spera* concluded that a person who had sustained a work-related injury had a right to recover "based on a concept of industrial insurance," not "mere governmental largesse that can be eliminated when the

worker's needs are fulfilled from another governmental source. Rather, the worker's statutory right to disability payments is akin to a contract right." 713 P.2d at 1156.

**9.** Social Security payments to felons are suspended during the term of incarceration. 42 U.S.C. 402(x). Federal courts have determined that this is not an ex post facto violation. *Butler v. Apfel*, 144 F.3d 622, 626 (9th Cir.1998); *Wiley v. Bowen*, 824 F.2d 1120, 1122 (D.C.Cir.1987); *Caldwell v. Heckler*, 819 F.2d 133, 134 (6th Cir. 1987); *Jones v. Heckler*, 774 F.2d 997, 998–99 (10th Cir.1985); *Jensen v. Heckler*, 766 F.2d 383, 386 (8th Cir.), *cert. denied*, 474 U.S. 945, 106

### E. Equal Protection

¶ 24 Aranda claims that the statute violates the equal protection given to "all persons who are similarly situated" by the state and federal constitutions, *e.g., State v. Beckerman,* 168 Ariz. 451, 453, 814 P.2d 1388, 1390 (App.1991), because the statute permits the continued payment of compensation to the extent that such payments have been garnished to satisfy a child-support obligation. A.R.S. § 23–1031(B). However, even accepting that Aranda may be a parent, he has not shown that his child is his dependent. If there is an unlawful distinction between those persons who are incarcerated and whose workers' compensation payments have been garnished to fulfill their obligations to their children and those incarcerated individuals whose payments have not, since Aranda has not shown that he is similarly situated to either group of parents who are obliged to support their children, we decline to address this issue. *See Brown v. Nesco Service Co.,* 701 So.2d 427 (Fla.App. 1997).

### F. Forfeiture

¶ 25 Aranda alleges that the suspension of his monthly payments is an unauthorized forfeiture. However, the interruption lasts only while the individual is incarcerated.

The award is unchanged, and there is no immutable withholding of benefits on this basis. *Compare* A.R.S. § 23–1026(C) (imposing suspension for refusing to submit to or obstructing independent medical examination) *and* A.R.S. § 23–1047(D) (imposing suspension for failing to file annual earnings report) *with* A.R.S. § 23–1028(A)(Supp.1998) (imposing forfeiture for knowingly making false statement to obtain workers' compensation benefits) *and* A.R.S. § 23–1071(A)(1995) (imposing forfeiture for leaving Arizona under specified circumstances without Industrial Commission approval).

### CONCLUSION

¶ 26 We conclude that A.R.S. section 23–1031 lawfully suspends workers' compensation benefits for those persons convicted or adjudicated delinquent and incarcerated.

CONCURRING: WILLIAM F. GARBARINO, Presiding Judge, and REBECCA WHITE BERCH, Judge.

S.Ct. 311, 88 L.Ed.2d 288 (1985); *Casalvera v. Commissioner of Social Sec.,* 998 F.Supp. 411, 415–16 (D.Del.1998); *Graham v. Bowen,* 648 F.Supp. 298, 302–03 (S.D.Tex.1986).